**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BROKER ONLINE EXCHANGE, LLC | § | |
| *Plaintiff,* | § | |
| v. | § | CIVIL ACTION NO. 4:22−cv−02674 |
| KONECT MANAGEMENT, LLC, d/b/a | § | |
| KONECT ENERGY, et al. | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS KONECT ENERGY'S AND MICHAEL RIZK'S**
**<u>AMENDED RULE 12(b)(6) MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

PAGE

I.   STATEMENT OF THE ISSUES.................................................................1

II.  SUMMARY OF ARGUMENT ..................................................................3

III. THE NATURE AND STAGE OF THESE PROCEEDINGS.......................4

IV.  STANDARD OF REVIEW .......................................................................7

V.   ARGUMENT AND AUTHORITIES ........................................................8
     A.   The FAC is an Impermissible "Shotgun" Pleading .........................8
     B.   BOX Fails to State a Claim for DTSA Misappropriation (Claim A) ...................10
          1.   The FAC Fails to State a State a Claim for Violation of the DTSA
               Because There Are No Facts Alleged From Which the Court Can Infer
               Any Legally Protectable Trade Secrets Were Obtained By Defendants
               Through Improper Means. ...................................................10
          2.   BOX's DTSA Claim Also Fails as a Matter of Law Because it Owns No
               Protectable Trade Secrets
     C.   BOX Fails to State an Actionable TAPA Claim (Claim B)....................................15
          1.   BOX's TAPA Claim Is Factually Deficient on Its Face...............................15
          2.   BOX's TAPA Claim for Violation of the TAPA Also Fails as a Matter
               of Law .................................................................16
               a.   BOX Lacks Standing Under the TAPA ..................................16
               b.   The TAPA Does Not Apply Extraterritorially.........................17
     D.   BOX's State Law Tort Claims Fail as a Matter of Law (Claims C-F) ...................19
          1.   The FAC Fails to State a Claim for Tortious Interference with
               Existing Contracts or Prospective Business Relations (Claims C and D) .....19
          2.   BOX's Claims for Conspiracy and "Assisting and Participating"
               Also Fail as a Matter of Law (Claims E and F) ..............................20

VI.  CONCLUSION ......................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.M. Castle & Co. v. Byrne*,
  123 F.Supp.3d 909 (S.D. Tex. 2015) ........................................................................14

*Agar Corp. v. Electro Circuits Int'l, LLC*,
  580 S.W.3d 136 (Tex. 2019) ....................................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................1, 7, 16

*Baxter & Assoc's, LLC v. D&D Elevators, Inc.*,
  2017 WL 604043 (Tex. App.--Dallas 2017) ...........................................................14

*Brown & Root Indus. Servs., LLC v. Brown*,
  2022 WL 4492087 (M.D. La. Sept. 9, 2022) ...........................................................11

*Byrne v. Nezhat*,
  261 F.3d 1075 (11th Cir. 2001) ...............................................................................10

*Calisi v. Unified Fin. Servs., LLC*,
  232 Ariz. 103 (Ct. App. 2013) .................................................................................14

*Chhim v. Univ. of Texas at Austin*,
  836 F.3d 467 (5th Cir 2016) ......................................................................................2

*Coca-Cola Co. v. Harmar Bottling Co.*,
  218 S.W.3d 671 (Tex. 2006)................................................................................2, 18

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
  417 S.W.3d 909 (Tex. 2013) ....................................................................................19

*Dichard v. Morgan*,
  2017 WL 5634110 (D.N.H. 2017) ...........................................................................13

*Duo-Fast Carolinas, Inc. v. Scott's Hill Hardware & Supply Co.*,
  2018 WL 264607 (N.C. Super. Jan. 2, 2018) ..........................................................14

*Firestone Steel Prod. v. Barajas*,
  927 S.W.2 608, 617 (Tex. 1996)................................................................................3

*Fund Texas Choice v. Paxton*,
  2023 WL 2558143 (W.D. Tex. February 24, 2023) .............................................2, 18

*Gonzales v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ............................................................................7

*Grant Thornton LLP v. Prospect High Income Fund*,
    314 S.W.3d 913 (Tex. 2010).............................................................................20

*Grow Financial Federal Credit Union v. GTE Federal Credit Union*,
    2017 WL 3492707 (M.D. Fla. 2017) ................................................................11

*Haley v. H&R Block Enterprises, L.L.C.*,
    2011 WL 13063872 (Tex. Dist. Aug. 22, 2011) ..........................................18, 19

*Harvey v. I.R.S.*,
    670 F. App'x 198 (5th Cir. 2016) ......................................................................7

*Heckman v. Williamson Cnty.*,
    369 S.W.3d 137 (Tex. 2012)..................................................................13, 14, 17

*Heralds of Gospel Foundation, Inc. v. Varela*,
    2017 WL 3868421 (S.D. Fla. 2017) .................................................................12

*Holcomb v. Waller Cnty.*,
    546 S.W.3d 833 (Tex. App.—Houston [1st Dist.] 2018, pet. denied)...................13

*In re Ozcelebi*,
    635 B.R. 467 (Bkr. S.D. Tex. 2021) ......................................................1, 9, 10

*In re Superior Air Parts, Inc.*,
    486 B.R. 728 (Bankr. N.D. Tex. 2012) .............................................................13

*Johnson v. City of Shelby, MS*,
    574 U.S. 10 (2014)............................................................................................1

*Kowal v. MCI Communications Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ........................................................................12

*Littell v. H.I.S.D.*,
    894 F.3d 616 (5th Cir. 2018) ............................................................................2

*Lycoming Engines v. Superior Air Parts, Inc.*,
    2014 WL 1976757 (N.D. Tex. May 15, 2014) ..................................................13

*Marmon v. Mustang Aviation Inc.*,
    437 S.W.2d 182 (Tex. 1968).............................................................................2

*Moore v. Carrington Mortg. Svces. LLC*,
    2018 WL 3853711 (N.D. Tex., July 17, 2018) ............................................1, 3, 8

*Moreno v. Ethicon, Inc.*,
  2022 WL 831548 (S.D. Tex., March 17, 2022) ....................................................2, 8

*Old Time Entrp., Inc. v. Intl. Coffee Corp.*,
  862 F.2d (5th Cir. 1989) ..........................................................................................8

*Panther Sys. II, Ltd. v. Panther Comput. Sys., Inc.*,
  783 F.Supp. 53 (E.D.N.Y. 1991) .............................................................................14

*Protection Technologies, Inc. v. Ribler*,
  2017 WL 923912 (D. Nev. 2017) ............................................................................12

*Reliable Consultants, Inc. v. Earle*,
  517 F.3d 738 (5th Cir. 2008) ....................................................................................7

*S. Leasing Partners, Ltd. v. McMullan*,
  801 F.2d 783 (5th Cir. 1986) ....................................................................................8

*Silverthorne v. Yeaman*,
  2013 WL 12382654 (S.D. Fla. 2013) ......................................................................10

*Sleekez, LLC v. Horton*,
  2017 WL 1906957 (D. Mont. 2017) .........................................................................12

*Smith v. Bank of America, N.A.*,
  615 F. App'x 830 (5th Cir. 2015) ..............................................................................3

*Sollberger v. Wachovia Securities, LLC*,
  2010 WL 2674456 (C.D. Ca. June 3, 2010) ....................................................7, 8, 10

*Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*,
  219 S.W.3 563, 590 (Tex. App. – Austin 2007, pet. denied)....................................19

*Thomas v. Independence Township*,
  463 F.3d 285 (3rd Cir. 2006) ....................................................................................8

*Thornton v. AstraZeneca Pharma. L.P.*,
  2011 WL 2255776 (N.D. Ga. 2017) ........................................................................10

*Tilton v. Marshall*,
  925 S.W.2d (Tex. 1996).............................................................................................3

*Tuchman v. DSC Communications Corp.*,
  14 F.3d 1061 (5th Cir. 1994) ..................................................................................12

*United Servs. Auto. Ass'n v. Mitek Sys., Inc.*,
  289 F.R.D. 244 (W.D. Tex. 2013) ...........................................................................11

*Weiland v. Palm Beach County Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) ..........................................................................1

*Westwind Acquisitions Co., LLC v. Universal Weather & Aviation, Inc.*,
    668 F.2d 749 (E.D. VA. 2009)........................................................................2, 18

*Zurich Am. Life Ins. Co. v. Nagel*,
    538 F. Supp. 3d 396 (S.D.N.Y. 2021)..............................................................11

**Statutes**

18 U.S.C. § 1836 et. seq. Defend Trade Secrets Act (DTSA) ............................... passim

Texas Business & Commerce Code § 325.001 et seq Texas Anti-Phishing Act (TAPA)..... passim

**Rules**

Fed. R. Civ. P. Rule 8 ...........................................................................................1

Fed. R. Civ. P. Rule 11 .........................................................................................8

Fed. R. Civ. P. 12(b)(6)....................................................................................... passim

Fed. R. Civ. P. Rule 12(e)..............................................................................1, 6, 7, 8

Fed. R. Civ. P. Rule 26 .........................................................................................4

**Other Authorities**

Restatement (Second), Torts § 876 (c) ...............................................................3

Defendants Konect Energy ("**Konect**") and Michael Rizk ("**Rizk**") (collectively "**Defendants**") respectfully move to dismiss Plaintiff Broker Online Exchange LLC's ("**BOX**") First Amended Complaint ("**FAC**") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (the "**Motion**") and in support thereof states as follows:

## I.      STATEMENT OF THE ISSUES

**ISSUE NO. 1.**  Whether the improper shotgun pleadings in the FAC incorporating *all* allegations in every preceding paragraph cumulatively as the generic *factual basis for all causes of action* that otherwise consist only of conclusory allegations of elements, are defective as failing to give Defendants sufficient notice, and therefore fail to state a claim against them?[1]

**ISSUE NO. 2**.  Whether the improper shotgun pleadings in the FAC lumping all thirty (30) Defendants (including at least three individuals) together without any distinction whatsoever in all of its plead causes of action are defective as failing to give sufficient notice to each Defendant as to the basis for each of BOX's causes of action against *each Defendant*, and therefore fails to state a claim against them?[2]

---

[1] "To survive a Motion to Dismiss under *Twombly* and *Iqbal*, a Plaintiff need only 'plead facts sufficient to show' that the claims asserted have 'substantive plausibility' by stating 'simply, concisely, and directly' the events Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, MS*, 574 U.S. 10, 12 (2014) . . . As opposed to the 'short and plain statement' requirement contemplated by Rule 8, shotgun pleadings contain several counts within a complaint with each count 'incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions'. [citations omitted] Such pleadings are subject to dismissal under Rule 12(b)(6) . . . because asserting claims in this manner – that is, 'by merely attaching a label and/or legal conclusion to no facts unique to that claim' – or, at best, threadbare unique facts – is not sufficient to state a claim that is plausible on its face.'" *Moore v. Carrington Mortg. Svces. LLC*, 2018 WL 3853711 at *1 & 3-4 (N.D. Tex., July 17, 2018) and extensive cases cited therein.

[2] "In *Weiland*, the 11th Circuit identified four types of 'shotgun pleadings' – imprecise complaints that fail 'to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests' . . . [T]he fourth type of shotgun pleading included in *Weiland* is a complaint which includes multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *In re Ozcelebi*, 635 B.R. 467, 472 (Bkr. S.D. Tex. 2021) citing *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). When a complaint fails to provide adequate notice because of shotgun pleadings, the Court may order the Plaintiffs to submit a more definite statement pursuant to Rule 12(e) (*Id.* at 473) or may dismiss them pursuant to Rule 12(b)(6). *Moore*, 2018 WL 3853711 at *4.

1

**ISSUE NO. 3.**  Whether BOX fails to invoke and/or to state a claim against Defendants under the Federal Defend Trade Secrets Act ("**DTSA**") when the FAC fails to allege any facts from which this Court can infer that it is an *owner* of a *protectable* trade secret as required by that Act?[3]

**ISSUED NO. 4.**  Whether BOX fails to state a claim against Defendants for violating the Texas Anti-Phishing Act ("**TAPA**") because that Act has no extra-territorial applicability to the claims brought by BOX, a Delaware LLC, for these non-Texas Defendants' alleged acts occurring, if at all, outside of Texas?[4]

**ISSUED NO. 5.**  *Assuming arguendo* that the TAPA is somehow applicable to any of BOX's claims, then whether the FAC's failure to allege any *facts* against these Defendants, other than conclusory legal allegations of the elements, results in a failure to state a claim against these Defendants for violating that Act?[5]

---

[3] "To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts sufficient to state a claim for relief that is plausible on its face." *Littell v. H.I.S.D.*, 894 F.3d 616, 622 (5th Cir. 2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts accept "the well-pleaded factual allegations in the complaint as true" but do "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir 2016). "Such pleadings are subject to dismissal under Rule 12(b)(6) because asserting claims in this manner … is not sufficient to state a claim that is plausible on its face." *Moreno v. Ethicon, Inc.*, 2022 WL 831548 at *1 (S.D. Tex., March 17, 2022) and cases cited therein.

[4] "It is axiomatic that 'no state can legislate except with reference to its own jurisdiction.' [citation omitted] Thus, the legislative power of one state is 'constrained by the need to respect the interests of other states.' [citations omitted] Accordingly, it is ordinarily presumed that state laws are intended to apply only within the state's territorial jurisdiction and not extra-territorially. Importantly, the Supreme Court of Texas has itself noted that a strong presumption exists that Texas statutes do not apply extra-territorially. [citation omitted] Indeed, in the absence of clear legislative intent to the contrary, Texas statutes should be interpreted to apply only within the territorial jurisdiction of the state." *Westwind Acquisitions Co., LLC v. Universal Weather & Aviation, Inc.*, 668 F.2d 749, 752 (E.D. VA. 2009), quoting *BMW v. N. Am. Inc. v. Gore*, 517 U.S. 559, 571 (1996) and citing *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006) and *Marmon v. Mustang Aviation Inc.*, 437 S.W.2d 182, 187 (Tex. 1968). In *Coca-Cola*, the Texas Supreme Court "held that, even though conduct outside the state might implicate Texas' interest in protecting its consumers, the idea that [the Texas Anti-Trust Statute] thus applied extra-territorially was 'simply unreasonable.'" *Fund Texas Choice v. Paxton*, 2023 WL 2558143 at *13 (W.D. Tex. February 24, 2023). (quoting *Coca-Cola*, 2018 S.W.3d at 683).

[5] *See* note 3, *supra*.

**ISSUE NO. 6.**  Whether BOX's failure to identity (a) any *specific* contracts interfered with, (b) any *specific* lost prospective business relationships, (c) the requisite independently tortious or unlawful acts allegedly committed by each Defendant, (d) *when* any of these allegedly unlawful or tortious acts by Defendants occurred within the applicable two year statute of limitations, and (e) the required actual damages proximately caused by each Defendant's wrongful acts; therefore fails to state a cognizable claim for tortious interference with BOX's existing contracts and/or with BOX's prospective business relationships against these Defendants?[6]

**ISSUE NO. 7.**  Whether the FAC failed to state any cognizable claims for conspiracy and/or assisting and participating against these Defendants when it failed to state any of the requisite intentional tort claims against the Defendants to which these parasitic claims could attach?[7]

## II.      SUMMARY OF ARGUMENT

In response to the Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Original Complaint, Plaintiff filed its FAC, which still fails to state a claim against these Defendants. Specifically, dismissal of the FAC pursuant to Rule 12(b)(6) is required for at least the following reasons: **(1)** the FAC is an impermissible "shotgun pleading" that still fails to provide Defendants or the Court with proper notice of the basis for BOX's claims; **(2)** the allegations in the FAC still constitute little more than conclusory and formulaic recitations of the elements, and fail to state

---

[6] The United States Supreme Court "has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the *factual* allegations in the complaint." *Smith v. Bank of America, N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (emphasis in original) (quoting *Johnson*, 574 U.S. at 12). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Moore*, 2018 WL 3853711 at *4 (quoting *Twombly*, 550 U.S. at 556). Pleadings that fail to meet this standard are subject to dismissal under Rule 12(b)(6). *Id.*

[7] *See*, notes 3&6, *supra*. "A defendant's liability for conspiracy depends on participation in some underlying tort. *Tilton v. Marshall*, 925 S.W.2d, 672, 681 (Tex. 1996). Because conspiracy itself requires intent, the required *tort* for conspiracy to attach must be an intentional tort. *Firestone Steel Prod. v. Barajas*, 927 S.W.2 608, 617 (Tex. 1996). To prove assisting and participating liability, the plaintiff must establish the primary actor committed a tort. *See*, Restatement (Second), Torts § 876 (c).

any claim with sufficient facts, particularly against each Defendant; (**3**) BOX's claims for violation of the DTSA and TAPA fail as a matter of law because (a) BOX lacks standing to invoke either Act and (b) the TAPA does not apply extraterritorially; and (**4**) BOX's state law based tort claims fail to (a) allege the necessary elements and (b) any supporting facts as required to properly state these claims.

### III.   THE NATURE AND STAGE OF THESE PROCEEDINGS.

On August 9, 2022, BOX filed this lawsuit against Konect Management, LLC ("**Konect**") and Michael Rizk ("**Rizk**") asserting a single cause of action for violation of the DTSA (the "**Complaint**"). (Dkt. # 1). On November 11, 2022, Konect and Rizk filed a Rule 12(b)(6) Motion to Dismiss for the reasons that BOX lacked standing under the DTSA and failed to allege any legally-valid trade secrets ("**Initial Motion to Dismiss**"). (Dkt # 12). **The DTSA is the sole basis for subject matter jurisdiction over this suit.**

On November 15, 2022, BOX filed a Joint Discovery/Case Management Plan ("**Plan**") stating in pertinent part that it anticipated no additional parties would be added to the action. (Dkt # 14 at ¶5).[8] On November 17, 2022, the Court entered a Scheduling Order setting a deadline of February 28, 2023 for the parties to file Amended Pleadings. (Dkt # 17).

On November 22, 2022, BOX filed its Response to the Initial Motion to Dismiss. (Dkt # 18). In its Response, BOX cited to paragraph 32 of the Complaint to argue that the information alleged was a trade secret since it was not publicly available (even though the Complaint contained no such allegation). (*Id.* at p. 3, 4; Dkt # 1 at ¶ 32). Although the Complaint failed to allege any protected trade secrets actually owed by BOX or any facts showing that Defendants actually accessed any of them improperly, in its Response BOX merely asserted that there was no lawful

---

[8] While the Plan stated that both parties had made their initial Rule 26 disclosures, BOX still has not done so in violation of Fed. R. Civ. P. 26.

way Rizk could have had the information and therefore "*ipso facto*" both he and Konect must have used some unknown improper means to acquire it. (Dkt # 18 at p. 4). BOX's Complaint, like the new FAC, is built entirely on this faulty premise—one which was, and remains, pure *ipse dixit*. BOX's Response implicitly acknowledged these pleading deficiencies in a footnote: "if the Court sees fit, BOX will request leave to amend its Complaint and will explain its business model in more detail." (*Id*. at p. 5). Regarding Defendants' standing argument—that the information allegedly misappropriated is owned by BOX's clients-customers and not by BOX itself—BOX simply asserted in its Response that it is the owner of the information and therefore it has standing, even though these *ipse dixits* conclusions were again entirely unsupported by any factual allegations in the Complaint. (*Id*. at p. 7).

On December 21, 2022, Defendants filed their Reply to the Initial Motion to Dismiss (Dkt. # 24). Defendants subsequently filed a counter-claim on January 25, 2023, which BOX answered on March 10, 2023. (Dkt #s 25,  30). On May 12, 2023, before the Court ruled on the Initial Motion to Dismiss and nearly three months after the deadline to file Amended Pleadings expired, BOX filed an Unopposed Motion for Leave to file the FAC, which was granted on June 28, 2023. (Dkt #s 31, 33).

On June 28, 2023, despite having previously represented that no additional parties would be added to this lawsuit, BOX filed the FAC adding three new Defendants, Energy Broker Online LLC ("**EBO**"), Niklaus Schwenker ("**Schwenker**"), and Rene Roland ("**Roland**"), in his individual and personal capacity, along with five additional state law causes of action for violation of the TAPA, tortious interference with existing contracts and prospective business relations, conspiracy, and "assisting and participating." (Dkt # 34 at pp. 27-33). While it is impossible to parse what claims BOX now brings against which Defendants, BOX's justification for adding

EBO and Roland apparently was merely that it "appears" to BOX that EBO is "a continuation" of Konect and Rizk's unidentified businesses. (FAC at ¶ 18).[9]

Further, although BOX previously represented it would provide the Court with more information regarding its business model, BOX did an about face and filed what amounts to nothing more than a new "shotgun pleading" designed to further obfuscate these issues. The FAC **does not cure** any of the deficiencies raised in the Initial Motion to Dismiss regarding the misappropriation claim **nor does it allege any facts supporting the new claims**. Rather, all of the allegations in the FAC relative to the DTSA and TAPA are conclusory statements made either "on information and belief" or couched in terms of what BOX thinks is either "highly likely" or what "it appears." In other words, nothing more than BOX's pure conjecture. (Comp. at ¶¶ 16, 23, 24-25, 27-28, 29, 35, 38;  FAC at ¶¶ 23, 25-26, 30, 34, 43, 44, 46-47, 63, 65, 68, 74, 77).

Moreover, all of BOX's claims in the FAC are still built on the same flawed, unsupported, conclusory allegation that "Defendants could not have had the information to send these phishing emails but for an illegal breach of BOX's security and misappropriation of BOX's trade secrets." (Comp. at ¶ 13; FAC at ¶ 20). Thus, while BOX again spends twelve pages spinning its story of how Rizk and Konect allegedly conduct their business (FAC at pp. 11- 22)—all of which is pure speculation—*the FAC still fails to allege any actual facts* that state a cause of action against any of the Defendants. Consequently, Defendants now file this Amended Motion to Dismiss Plaintiff's First Amended Complaint, (and alternatively, for a more definite statement pursuant to FRCP 12(e)).

---

[9] While BOX claimed in the Motion for Leave to Amend that the FAC contained "detailed explanations" that EBO is "simply a continuation of Konect and Rizk's allegedly unlawful business and the torts described in the Complaint" (Dkt # 31 at p. 2), the FAC fails to allege any facts, let alone such a "detailed explanation," of any connection between Konect, Rizk, Roland, and EBO. *See* FAC, generally.

## IV.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (internal citations omitted). In turn, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," and must "permit the court to infer more than the mere possibility of misconduct[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Otherwise, "the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotes and citations omitted).  In turn, the court is not "bound to accept as true" those legal conclusions in a complaint that are "couched as factual allegations." *Iqbal*, 556 U.S. at 678.

While courts have noted that Rule 12(b)(6) dismissals are generally disfavored, "a court should [nonetheless] dismiss a complaint when its allegations fail to state a claim upon which relief can be granted." *Sollberger v. Wachovia Securities, LLC*, 2010 WL 2674456 at *3 (C.D. Ca. June 3, 2010). A court's dismissal under Rule 12(b)(6) is reviewed *de novo*. *Harvey v. I.R.S.*, 670 F. App'x 198, 200 (5th Cir. 2016).

Alternatively, "when presented with an appropriate FRCP 12(e) motion for a more definite statement, the district court shall grant the motion and demand more specific factual allegations

from the plaintiff concerning the conduct underlying the claims for relief. . . . The district court

has the discretion to order a more definite statement." *Thomas v. Independence Township*, 463

F.3d 285, 301 (3rd Cir. 2006). "[Courts of appeal] review [an] order made pursuant to Rule 12(e)

for abuse of discretion." *Old Time Entrp., Inc. v. Intl. Coffee Corp.*, 862 F.2d, 1213, 1217 (5th Cir.

1989).

## V.     ARGUMENT AND AUTHORITIES

### A.     The FAC Is An Impermissible "Shotgun" Pleading.

The FAC is a prototypical example of a "shotgun pleading," the widely condemned

practice in which the pleader heedlessly throws a little bit of everything into his complaint in the

hopes that something will stick [.]" *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th

Cir. 1986). Indeed, if the Federal Rules of Civil Procedure, such as Rule 8 and Rule 11, "mean

anything . . . [they] must mean an end to such expeditionary pleadings." *Id*. That is because shotgun

pleadings like the FAC are intended simply to "overwhelm defendants with an unclear mass of

allegations and make it difficult or impossible for [defending parties] to make informed responses

to the plaintiff's allegations." *Sollberger*, 2010 WL 2674456 at *4.[10] Shotgun pleadings are

therefore subject to dismissal under Rule 12(b)(6) because "asserting claims in this manner—that

is, by merely attaching a label and/or legal conclusion to no facts unique to that claim—or, at best,

threadbare unique facts—is not sufficient to state a claim that is plausible on its face." *Moore*,

2018 WL 3853711 at *4.

"One common type of shotgun pleading comes in cases with multiple defendants where

the plaintiff uses the omnibus terms 'Defendants' throughout a complaint by grouping defendants

---

[10] *See also Moreno v. Ethicon Inc.*, 2022 WL 831548, at *1 (S.D. Tex. Mar. 17, 2022)(granting Rule 12(b)(6) motion
to dismiss finding complaint was impermissible shotgun pleading since ". . . the paragraphs in plaintiffs' complaint
are generalized factual allegations against defendants, void of any specificity.").

together without identifying what the particular defendants specifically did wrong." *Sollberger*, 2010 WL 2674456 at *4; *see also In re Ozcelebi*, 635 B.R. 467 at 472 (shotgun pleading includes multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against). "Another type [of shotgun pleading] is where the plaintiff recites a collection of general allegations toward the beginning of the Complaint and then 'each count incorporates every antecedent allegation by reference." *Id*. citing *Byrne v. Nezhat*, 261 F.3d 1075, 1129 (11th Cir. 2001). "This leads to a "situation where most of the counts ... contain irrelevant factual allegations and legal conclusions." *In re Ozcelebi*, 635 B.R. at 472. Third, ". . . a shotgun pleading" ". . . occurs when a complaint is full of conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.*

BOX employs ***all three*** types of shotgun pleading in the newest version of its Complaint. Here, BOX has "group pleaded" allegations against businesses and individuals for purported illegal and fraudulent acts without specifying which of the Defendants are responsible for which acts or omissions, or which of the Defendants the claim is brought against.  The lack of clarity is particularly apparent where, as here, the FAC adopts all of the allegations in the preceding paragraphs, causing each to carry all that came before it.  (FAC at ¶¶ 70, 80, 89, 94, 98, 104). In the FAC, after roughly 34 pages of rambling allegations—12 pages which have nothing to do with the actual causes of actions asserted—BOX then begins its first claim for misappropriation by stating, "BOX incorporates by reference the preceding Paragraphs of this Complaint as if the same were set forth in full herein." (*Id*. at ¶ 70). All of the next five claims, including those sounding in tort, include that very same language. (*Id*. at ¶¶ 780, 89, 94, 98, 104). "This language is certainly

the type frequently dismissed by courts as an impermissible shotgun pleading." *In re Ozcelebi*, 635 B.R. at 474.[11]

In addition, the FAC is not pled with sufficient clarity to provide notice to the Defendants of what is being alleged, much less allow to the Court to rule on the merits. *See e.g., Thornton v. AstraZeneca Pharma. L.P.*, 2011 WL 2255776 (N.D. Ga. 2017) (a "one-size-fits-all-form complaint" that is not personalized "plainly qualifies as a shotgun pleading"). There is no way to respond to the FAC, let alone defend against it, because it is impossible to ascertain which Defendant did what regarding any particular cause of action. As such, all of BOX's claims constitute impermissible shotgun pleadings violating Rules 8(a)(2), 9(b), and 10(b).

This is not a harmless practice especially since this is already BOX's **second** attempt at proper pleadings. Shotgun pleadings serve only to "extort the settlement of unmeritorious claims, as demonstrated in this case." *Byrne*, 261 F.3d at 1131.  Shotgun pleadings, like the FAC, also "wreak havoc on the judicial system by consum[ing] an inordinate amount of a court's time," and lead the public to "lose respect for the [judicial] system." *Id*. The FAC poses precisely these Rizks. While normally shotgun pleadings might warrant repleading after a motion for more definite statement, after the first dismissal motion, BOX's continued failure to plead anything beyond a shotgun pleading amounts to failure to state a claim. *See Sollberger*, 2010 WL 2674456, at *5. In turn, the FAC should be dismissed.

**B.     BOX Fails to State a Claim For DTSA Misappropriation (Claim A)**

**1.     The FAC Fails to State a State a Claim for Violation of the DTSA Because There Are No Facts Alleged From Which the Court Can Infer Any Legally Protectable Trade Secrets Were Obtained By Defendants Through Improper Means.**

---

[11] *See also Silverthorne v. Yeaman*, 2013 WL 12382654, at *3 (S.D. Fla. 2013) (finding that a complaint contained improper shotgun pleadings where each count stated that Plaintiff "repeats and re-alleges and incorporates by reference the allegations in paragraphs 1-66 with the same force and effect as herein set forth").

BOX's DTSA claim fails because the categories of information alleged by BOX are insufficiently precise to demonstrate (1) the existence of a protectable trade secret under the DTSA, that is (2) **owned** by BOX. *See e.g., Zurich Am. Life Ins. Co. v. Nagel,* 538 F. Supp. 3d 396 (S.D.N.Y. 2021) (holding "nebulous descriptions" of general categories of information and data as trade secrets does not state a claim under the DTSA). Specifically, the only alleged "trade secrets" are categories of information that belong to BOX's broker-clients' customers—contact information, customers' current and prior electricity suppliers, and "details and terms" regarding electricity contracts—not to BOX.  (FAC at ¶ 12). Such "[c]atchall' phrases or mere 'categories' of trade secrets are inadequate" to state a DTSA claim. *Brown & Root Indus. Servs., LLC v. Brown*, 2022 WL 4492087, at *5 (M.D. La. Sept. 9, 2022); *see also United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 248-49 (W.D. Tex. 2013) (plaintiff asserting claim of misappropriation is required, before commencement of discovery, to separately break out each individual trade secret it contended that defendant misappropriated, and to identify all such claims with sufficient particularity so that reader could understand how each such claim differed from public domain information).[12]

Moreover, the FAC fails to plead any facts whatsoever showing that BOX took the required steps to protect the purported trade secrets from disclosure; relying instead on the conclusory allegation that it "spent significant time and money developing the MSC, which ensures the confidentiality of its brokers and Plaintiff's trade secrets." (FAC at ¶¶  13, 72). This is insufficient. *See e.g., Grow Financial Federal Credit Union v. GTE Federal Credit Union*, 2017 WL 3492707, *3 (M.D. Fla. 2017)(to state a claim for misappropriation a plaintiff is required to allege the

---

[12] Notably, while BOX alleges that Defendants sent emails both independently and via DocuSign, there is no allegation that any of the emails purportedly sent by Defendants allegedly using fictitious names contained any BOX's broker-clients' customers account numbers or utility contract dates. (FAC at ¶19).

information in question had a particular security, such as a restricted service, password, protection or encryption).[13]

Further, BOX alleges no facts supporting its "information and belief" that the Defendants obtained BOX's purported trade secrets by some unspecified "improper means." *See Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (while fraud may be plead on information and belief under certain circumstances it "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations."); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994) (even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief). Instead, BOX's misappropriation claim relies on the conclusory allegation that Defendants could not have had access to the information—which BOX says belongs to its clients' customers and not to BOX— unless they somehow illegally breached BOX's security or accessed BOX's My Service Cloud ("**MSC**"). (FAC at ¶¶  20, 74, 77). Of course, BOX never says **how** or **when** these Defendants actually did either of those things.

And the few facts that BOX does allege are either vague or entirely speculative.  For instance, while the FAC alleges that BOX's broker-clients register their customers information with BOX, it does not allege that BOX stored that "registered information" on the MSC. (FAC at ¶ 12). Instead, the FAC merely alleges that "confidential and information and trade secrets are stored in [the MSC]" without identifying what specific information was stored there or whether that information was the same information that was "registered" by BOX's broker-clients or its clients' customers. (FAC ¶ 71). A pleading that merely states that the trade secret information "was

---

[13] *See also Heralds of Gospel Foundation, Inc. v. Varela*, 2017 WL 3868421, *5 (S.D. Fla. 2017); *Sleekez, LLC v. Horton*, 2017 WL 1906957, *4 (D. Mont. 2017); *Protection Technologies, Inc. v. Ribler*, 2017 WL 923912, *2 (D. Nev. 2017).

stored in files" is inadequate to state a claim for misappropriation of trade secrets. *See e.g., Dichard v. Morgan*, 2017 WL 5634110 (D.N.H. 2017).

Given the vague and conflicting allegations regarding the alleged improper conduct in the FAC, it is unclear whether BOX claims Defendants obtained the information by breaching "BOX's security" or by "accessing" the MSC. (FAC at ¶¶ 12-13, 20, 24, 70, 74). The FAC only alleges that "Plaintiff's investigation reveals ***Konect attempted to log into [the MSC].***" Not surprisingly, there is ***no allegation*** in the FAC that any information was obtained by any of the Defendants as a result of this unsuccessful attempt to log into the MSC. (*Id*. at ¶ 24). The FAC then alleges all Defendants collectively somehow "unlawfully accessed" the MSC ***on information and belief*** while still failing to allege any actual facts describing the "unlawful access," including ***what*** the access was, ***when*** it allegedly occurred, or ***what***, if any, information was wrongfully obtained.  (*Id*. at ¶ 74). *See e.g., In re Superior Air Parts, Inc*., 486 B.R. 728, 741 (Bankr. N.D. Tex. 2012), aff'd sub nom. *Lycoming Engines v. Superior Air Parts, Inc*., 2014 WL 1976757 (N.D. Tex. May 15, 2014) (finding plaintiff failed to allege any facts supporting their claim that defendant obtained trade secrets by improper means where the plaintiff did not provide any description of the alleged improper conduct).

### 2.     BOX's DTSA Claim Also Fails as a Matter of Law Because It Owns No Protectable Trade Secrets.

"Under Texas law, as under federal law, the standing inquiry begins with the plaintiff's alleged injury." *Heckman v. Williamson Cnty*., 369 S.W.3d 137, 155 (Tex. 2012).[14] The plain language of the DTSA explicitly states that only "[a]n ***owner*** of a trade secret that is misappropriated may bring a civil action under this subsection . . ." 18 U.S.C. § 1836(b)(1)

---

[14] *See also Holcomb v. Waller Cnty.*, 546 S.W.3d 833, 837 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("[w]e begin our [standing] analysis by identifying the alleged wrong and deciding whether there was a causal connection between the defendant's actions and the injury caused by the alleged wrong.").

(emphasis added). BOX cannot establish that it ***owns*** the alleged trade secrets because it is merely a service provider, not a creator, or owner of trade secrets.[15] Indeed, the FAC identifies the alleged trade secrets as information "related to [BOX's clients'] respective customer" and admits that this information belongs to those broker-clients, not to BOX. (FAC at ¶ 12). Thus, by alleging ***it is not an owner*** of the allegedly misappropriated trade secrets BOX has plead itself out of any standing under the DTSA.[16]

BOX's misappropriation claim also fails as a matter of law because it has not and cannot prove a legally protected trade secret exists. *Calisi v. Unified Fin. Servs., LLC,* 232 Ariz. 103, 106 (Ct. App. 2013) ( to establish a claim for misappropriation of a trade secret, BOX must first prove a legally protectable trade secret exists). Here, BOX has defined its trade secrets as customer information such as customers' contact information, customers' current and previous electricity suppliers, and details of customers' current and previous electric contracts. (FAC at ¶ 12) However, "the identities of [plaintiff's] customer and vendors and relationships formed with them are not trade secrets as a matter of law . . ." *Baxter & Assoc's, LLC v. D&D Elevators, Inc*., 2017 WL 604043, at *9 (Tex. App.--Dallas 2017).[17] In turn, BOX cannot establish a trade secret because the information allegedly misappropriated is readily ascertainable through the internet, trade shows, or the yellow pages.[18]

---

[15] See BOX's website https://www.brokeronlinexchange.com/ wherein BOX holds itself out to the public as a service provider and storage site

[16] *See e.g., Heckman*, 369 S.W.3d at 154-55 ("the plaintiff must be ***personally injured***" and that injury "must be concrete and particularized, actual or imminent, not hypothetical").

[17] *See also Duo-Fast Carolinas, Inc. v. Scott's Hill Hardware & Supply Co.,* 2018 WL 264607 at * 6-7 (N.C. Super. Jan. 2, 2018)(finding customer lists comprising of  "… current and potential customer information such as customer names and contact information, historical sales data, product pricing, and product preference and usage" and "vendor information" are not trade secrets because information is easily available to public).

[18] *See e.g., A.M. Castle & Co. v. Byrne*, 123 F.Supp.3d 909, 916 (S.D. Tex. 2015)(where names and addresses of customers and vendors on a party's customer or vendor list are "readily ascertainable," the list is not protectable as a trade secret); *see also Panther Sys. II, Ltd. v. Panther Comput. Sys., Inc*., 783 F.Supp. 53, 67 (E.D.N.Y. 1991)("names of customers ascertainable through public sources will not be protected as trade secrets").

**C.      BOX Fails To State An Actionable TAPA Claim (Claim B).**

**1.      BOX's TAPA Claim Is Factually Deficient on Its Face.**

Like BOX's claim for misappropriation, its claim for violation of the TAPA is built entirely on the speculative and conclusory allegation (based on information and belief) that "it is highly likely" that Konect is behind the phishing emails.  (FAC at ¶¶ 25-26, 30, 34, 63). BOX not only fails to plead facts in support of that conclusion, it fails to identify the names of the customers who received the purported phishing emails, when the emails were sent or received, or that any specific recipient is a Texas resident. (FAC at ¶¶ 21, 44, 49, 52-63).

Further, while the FAC alleges Defendants collectively used eight (8) IP addresses and twenty-one (21) allegedly fake aliases and business names to send the purported phishing emails these allegations are too attenuated to meet the requisite pleading standards on their face. (FAC at ¶¶ 23-35). "Indeed, there is not a single allegation in the FAC that any of the Defendants owned or used the devices associated with the IP addresses. ***In fact, the allegations in the FAC establish that BOX does not even know who owns or used the devices tied to the IP addresses***. Instead, BOX just speculates that "it is highly likely that the same person, or, at the very least, the same device was behind both activities." ( FAC at ¶¶ 25, 30).

Likewise, BOX makes the conclusory allegation that "Defendants created fake identifies and fake business names" (FAC at ¶19) but still fails to allege any facts setting forth ***who*** created them, ***when*** they were created, or ***how*** they were created. (FAC at ¶¶ 24-35). **Indeed, BOX fails to plead any facts showing that any of the allegedly fake individuals or businesses are *not* real third-parties.** Instead, BOX just expects this Court to assume that **all** of the individuals and business are fake simply because it says so.

The same is true for the Defendants' alleged use of the purported fake alias and business names. The FAC merely alleges that BOX and its counsel through "extensive investigation" determined that Defendants collectively used them to send the purported phishing emails, presuming that this Court will infer Defendants' fault just on BOX's say so. (*Id*. at ¶ 23 ). The FAC, however, is void of any facts explaining what BOX or its counsel did in this "investigation," nor does it identify with any specificity what information they discovered that would allow the Court—not them—to reach such a conclusion. This is impermissible. As the Supreme Court explained, the Complaint must allege actual facts (not "unadorned accusations") that would "permit the Court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678.[19]

Finally, BOX fails to allege any wrongful conduct by Defendants that proximately caused its alleged injuries, i.e., lost profits as a result of brokers' unwillingness to work with BOX. (FAC at ¶87). The FAC does not identify those who allegedly received the purported phishing emails or the "brokers" who allegedly are unwilling to work with BOX. The FAC likewise is void of any factual allegations showing that the brokers who allegedly are unwilling to do business with BOX actually received any of the alleged phishing emails or that a particular email proximately caused them either not to do business with BOX or to breach an actual contract with BOX. In short, BOX utterly fails to state a cause of action for violation of the TAPA.

## 2. BOX's TAPA Claim for Violation of the TAPA Also Fails as a Matter of Law.

### a. BOX Lacks Standing Under the TAPA.

---

[19] Worse, the information purportedly uncovered during BOX's "investigation" is actually contradicted by the very allegations in the FAC. For instance, the allegedly fake aliases and business names listed in the FAC, which BOX alleges it discovered were used by Defendants during its investigation, does not include "Electricity Renewal *Management*" and instead identifies "Electricity Renewal *Agreement*." (FAC at ¶ 23). Further, the IP address (44.234.249.148) BOX alleges was associated with "Electricity Renewal *Management*" (FAC at ¶ 33) is also alleged to be associated with "Electricity Renewal *Agreement*." (FAC at ¶¶ 34-35). Neither the caption or the introductory paragraph of the FAC identifies "Electricity Renewal Management" as an alleged fictitious business name used by Konect or Rizk. (*Id.* at p. 1).

Only three entities may bring a civil action under the TAPA: (1) a person who provides internet access to the public and is damaged by the prohibited acts; (2) a trademark or website owner who is damaged by the prohibited acts; and (3) the Texas attorney general. *See* Tex. Bus. & Comm. Code § 325.006. While BOX alleges that it is an owner of a website it cannot allege it was deceived or damaged by any conduct on the part of the Defendants because it admits that the recipients of the purported phishing emails were "***potential customers***" or "***consumers***"—not BOX itself, BOX's broker-clients, or its broker-clients' customers. (FAC at ¶ 19). Indeed, while BOX makes the speculative allegation, without any facts plead in support, that the emails "*oftentimes*" deceive "*potential customers*" by stating the contract is coming up for renewal, BOX admits that this purportedly deceptive statement was "***sometimes true***." (FAC at ¶ 19). Moreover, BOX cannot establish any alleged injury that is "fairly traceable" to Defendants since it has not alleged that they owned or used the devices associated with the IP addresses where the emails were allegedly sent from or any facts supporting the conclusion that they created the allegedly fake alias and businesses. *See Heckman*, 369 S.W.3d 137 at 155 ("[c]ourts act only to redress injury that fairly can be traced to the challenged action of the defendant, *and not injury that results from the independent action of some third party not before the court*.")

### b.  The TAPA Does Not Apply Extraterritorially.

Regardless, even if BOX somehow has standing under the TAPA, which it does not, its claim still fails because the alleged conduct took place outside of Texas and the TAPA has no extraterritorial effect.[20] It is axiomatic that 'no state can legislate except with reference to its own jurisdiction.' [citation omitted] Thus, the legislative power of one state is 'constrained by the need

---

[20] Although  the FAC contains no allegation that Defendants created a webpage without the authorization of the business owner or any facts showing that any of the alleged alias or business are in fact fake or were created by Defendants, BOX nonetheless alleges that Defendants sent emails containing links to a web page that was represented as being associated with a legitimate online business. (FAC at ¶ 83).

to respect the interests of other states.' [citations omitted] Accordingly, it is ordinarily presumed that state laws are intended to apply only within the state's territorial jurisdiction and not extra-territorially. Importantly, the Supreme Court of Texas has itself noted that a strong presumption exists that Texas statutes do not apply extra-territorially. [citation omitted] Indeed, in the absence of clear legislative intent to the contrary, Texas statutes should be interpreted to apply only within the territorial jurisdiction of the state." *Westwind Acquisitions Co., LLC v. Universal Weather & Aviation, Inc.*, 668 F.2d 749, 752 (E.D. VA. 2009) and cases therein. Critically, the TAPA does not express any intent, much less a clear one, to apply extraterritorially and "it is settled law in Texas that a law will not be given extraterritorial effect unless such intent is clear." *Fund Texas Choice v. Paxton*, 2023 WL 2558143, at *13 (W.D. Tex. Feb. 24, 2023).

Here, even assuming BOX's allegations are true, the geolocation data associated with the IP addresses where BOX alleges the purported phishing emails were sent from confirms none were sent from Texas. Thus, the TAPA cannot reach those alleged improper out of state acts. Even if BOX (a Delaware LLC) could somehow be construed to be a Texas "citizen" that would be insufficient for the TAPA to reach Defendants since none of their alleged acts occurred in Texas. *See e.g., Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671 (Tex. 2006) (holding that even though conduct outside the state might implicate Texas's interest in protecting its consumers, the idea that the [Texas] statute thus applied extraterritorially was simply unreasonable").

Accordingly, BOX's TAPA claim must be dismissed. *See e.g., Haley v. H&R Block Enterprises, L.L.C.*, 2011 WL 13063872, at *1 (Tex. Dist. Aug. 22, 2011) (granting defendants' motion for summary judgment and dismissing claims for violation of the TAPA where defendant argued plaintiff lacked standing and there was no evidence or defendants created a deceptive website or sent deceptive emails).

**D.      BOX's State Law Tort Claims Fail As a Matter of Law (Claims C - F).**

**1.      The FAC Fails To State A Claim for Tortious Interference With Existing Contracts or Prospective Business Relations (Claims C and D).**

BOX fails to state claims for tortious interference with existing contracts or prospective business relations because there are no specific facts plead establishing that any of the Defendants actions were independently tortious, that an obligatory provision of an existing contract was breached, or that Defendants' conduct caused BOX to suffer any actual damages.[21]

Here, BOX has not sufficiently alleged Defendants interfered with any existing contract or prospective relationship as the FAC fails to identify any **actual contracts** or **specific business relationships** that were interfered with. Rather, BOX alleges the purported phishing emails were received by unidentified two-step removed third parties, i.e., BOX's broker-clients' customers with whom BOX had no contractual relationship. *See e.g., WickFire,* 989 F.3d 343 ("[u]nder Texas law, to prevail on claim for tortious interference with contractual relations, the plaintiff must present evidence that some obligatory provision of a contract was breached.") Accordingly, BOX's tortious interference claims fail as a matter of law because it cannot and does not allege any contract or business relationship between BOX and its broker-clients [or even BOX and its broker-clients' customers] that Defendants interfered with or was breached as a result of their alleged conduct. *See Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3 563, 590 (Tex. App. – Austin 2007, pet. denied) (upholding dismissal of tortious interference with contract claim when there was no evidence of a valid contract and dismissal of a tortious interference with business expectancy claim when there was no evidence that any interference prevented the

---

[21] *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013);*see also* see also *see also WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 357 (5th Cir. 2021)(plaintiff must show there was a reasonable probability that plaintiff would have entered into a business relationship with a third party and the defendant's conduct was independently tortious or unlawful).

relationship from occurring).

**2.      BOX's Claims for Conspiracy And "Assisting and Participating" Also Fail As A Matter Of Law (Claims E and F).**

While BOX's civil conspiracy claim alleges Defendants collectively conspired to misappropriate BOX's alleged trade secrets and interfere with BOX's existing and prospective contracts, the allegations of the FAC relative to the "assisting and participating" claim are directed only at EBO and Schwenker. (FAC at ¶¶ 98-102, 104-107). However, to the extent BOX brings either of its claims for conspiracy or "assisting and participating" against Konect or Rizk those claims still fail as a matter of law because they both are derivative torts.[22] In turn, because BOX's claims for misappropriation and tortious interference fail as a matter of law for the reasons set forth *supra* BOX's claims for conspiracy and "assisting and participating" fail with them and, therefore, must be dismissed.

## VI.    CONCLUSION

WHEREFORE, for all the foregoing reasons, Defendants Konect Management LLC and Michael Rizk respectfully request that the Court grant the Motion and Dismiss the entire case and grant any other relief the Court may deem just and proper.

---

[22] *See Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140-41 (Tex. 2019)( "civil conspiracy [is] a 'derivative tort,' meaning it depends on some underlying tort or other illegal act."); *see also Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 930–31 (Tex. 2010) (if the tort claim fails, the assisting-or-encouraging claim also fails.); *WickFire*, 989 F.3d 343 at 358 ("[d]erivative in this context means a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it.").

Dated this 31st day of July 2023        By:  */s/ Bruce Stanfill*
                                                        Wm. Bruce Stanfill
         Texas Bar No. 19034350
         Southern District Bar No. 8889
         Akerman LLP
         1300 Post Oak Blvd., Suite 2300
         Houston, TX 77056
         (713) 623-0887
         bruce.stanfill@akerman.com

         Thomas G. Pasternak
         Admitted Pro Hac Vice
         Akerman LLP
         71 South Wacker Drive, 46th FL.
         Chicago, IL 60606
         Telephone:  (312) 634-5700
         Fax:  (312) 424-1900
         Email:  thomas.pasternak@akerman.com
         *Attorneys for Defendants*
         *Konect Energy, Michael Rizk and Rene*
         *Roland*

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for Defendants (Tom Pasternak) notified counsel for Plaintiff (Mark Levine) in writing by Defendants' First Motion to Dismiss and then subsequently by telephone of Defendants' issues with the lack of specific factual allegations on particular causes of action and required components of those claims and were unable to reach agreement on a need for another amended complaint providing more specific factual details.

                                                      */s/ Thomas G. Pasternak*
                                                   Thomas C. Pasternak

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2023, I filed the foregoing, **KONECT ENERGY'S AND MICHAEL RIZK'S RULE 12(b)(6), MOTION TO DISMISS** with the Court using the ECF system, which will provide notice and a copy to counsel of record.

> Mark J. Levine
> State Bar No. 00791102
> Federal ID No. 20021
> WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
> 24 Greenway Plaza, Suite 2050
> Houston, Texas 77046
> Telephone: (713) 961-9045
> Facsimile: (713) 961-5341
> mlevine@wkpz.com

> */s/ Thomas G. Pasternak*
> Thomas G. Pasternak

22

71987747;1