**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BROKER ONLINE EXCHANGE, LLC | § | |
| *Plaintiff,* | § | |
| v. | § | CIVIL ACTION NO. 4:22−cv−02674 |
| KONECT MANAGEMENT, LLC, d/b/a | § | |
| KONECT ENERGY, et al., | § | |
| *Defendants.* | § | |

**<u>DEFENDANT ROLAND'S RULE 12(b)(2) and (b)(6) MOTION TO DISMISS</u>**

i

# TABLE OF CONTENTS

I.     STATEMENT OF THE ISSUES ................................................................... 1

II.    SUMMARY OF ARGUMENT ...................................................... 3

III.   THE NATURE AND STAGE OF THESE PROCEEDINGS ....................... 4

IV.   STANDARD OF REVIEW ......................................................... 7

    1.   Fed. R. Civ. P. 12(b)(2)---Personal Jurisdiction .............................. 7

    2.   Fed. R. Civ. P. 12(b)(6)—Failure to State a Claim ......................... 8

V.    ARGUMENT AND AUTHORITIES ............................................. 9

  A.  Dismissal is Required Under Rule 12(b)(2) Because The Court Lacks Personal Jurisdiction Over Roland. ................................................................. 9

    1.   BOX Has Not and Cannot Allege General Jurisdiction. ................................ 9

    2.   This Court Lacks Specific Jurisdiction Because Roland Has Not Purposefully Directed Any Activity Relating To This Litigation At the State of Texas .................. 11

  B.  Dismissal is Required Under Rule 12(b)(6) ....................................... 12

    1.   The FAC Is An Impermissible "Shot Gun" Pleading. ................................. 12

    2.   BOX Has Not And Cannot State a Claim Against Roland for Violation of the DTSA. (Claim A) .......................................................................... 14

    3.   Even if the FAC States a Claim, BOX's Claim Under the DTSA Fails as a Matter of Law Because It Lacks Standing And The Information Allegedly Wrongfully Obtained Is Not A Legally Protectable Trade Secret. .......................................... 16

  C.  BOX Has Not And Cannot State a Claim Against Roland for Violation of the Texas Anti-Phishing Act. (Claim B) ........................................................... 17

    1.   BOX's TAPA Claim is Factually Deficient on its Face ................................ 17

    2.   BOX's Claim for Violation of the TAPA Fails as a Matter of Law. ................ 18

  D.  BOX Has Not And Cannot State a Claim Against Roland for Tortious Interference, Conspiracy, Or Assisting and Participating (Claims C-F) .............................. 20

VI.   CONCLUSION .......................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.M. Castle & Co. v. Byrne*,
 123 F. Supp. 3d 909 (S.D. Tex. 2015) ...................................................................17

*Agar Corp. v. Electro Circuits Int'l, LLC*,
 580 S.W.3d 136 (Tex. 2019)...................................................................................20

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...............................................................................................1, 8

*Bavikatte v. Polar Latitudes, Inc.*,
 2015 WL 8489997 (W.D. Tex. 2015) ...................................................................1, 12

*Baxter & Assoc. LLC v. D&D Elevators, Inc.*,
 2017 WL 604043 (Tex. App.—Dallas 2017, no pet.) ............................................17

*BMC Software Corp, N.V. v. Marchand*,
 83 S.W.3d 789 (Tex. 2002).......................................................................................9

*BMW of N. Am. Inc. v. Gore*,
 517 U.S. 559 (1996)...................................................................................................2

*Brown & Root Indus. Servs., LLC v. Brown*,
 2022 WL 4492087 (M.D. La. Sept. 9, 2022) .........................................................14

*Byrne v. Nezhat*,
 261 F.3d 1075 (11th Cir. 2001) ..............................................................................13

*Calisi v. Unified Fin. Servs., LLC*,
 232 Ariz. 103 (Ct. App. 2013) ................................................................................16

*Chhim v. Univ. of Texas at Austin*,
 836 F.3d 467 (5th Cir 2016) ......................................................................................2

*Coca-Cola Co. v. Harmar Bottling Co.*,
 218 S.W.3d 671 (Tex. 2006)................................................................................2, 19

*Duo-Fast Carolinas, Inc. v. Scott's Hill Hardware & Supply Co.*,
 2018 WL 264607 (N.C. Super. Jan. 2, 2018) .........................................................17

*Firestone Steel Prod. v. Barajas*,
 927 S.W.2 608, 617 (Tex. 1996)................................................................................3

*Francosteel Corp. v. M/V Charm*,
    19 F.3d 624 (11th Cir. 1994) ............................................................... 12

*Frank A. Smith Sales, Inc. v. Atl. Aero, Inc.*,
    31 S.W.3d 742 (Tex. App.-Corpus Christi 2000, no pet.) ........................ 12

*Fund Texas Choice v. Paxton*,
    2023 WL 2558143 (W.D. Tex. February 24, 2023) .......................... 2, 19

*Garcia v. Peterson*,
    319 F. Supp. 3d 863 (S.D. Tex. 2018) ................................................. 10

*Gonzales v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ................................................................ 8

*Grant Thornton LLP v. Prospect High Income Fund*,
    314 S.W.3d 913 (Tex. 2010) ............................................................... 20

*Haley v. H&R Block Enterprises, L.L.C.*,
    2011 WL 13063872 (Tex. Dist. Aug. 22, 2011) ............................... 19, 20

*Heckman v. Williamson Cnty.*,
    369 S.W.3d 137 (Tex. 2012) ............................................................ 16, 19

*Holcomb v. Waller Cnty.*,
    546 S.W.3d 833 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ............ 16

*House v. 22 Texas Services, Inc.*,
    60 F. Supp. 2d 602, 609 (S.D. Tex. 1999) .......................................... 11

*In re Ozcelebi*,
    635 B.R. 467 (Bkr. S.D. Tex. 2021) ................................................ 2, 13

*In re Superior Air Parts, Inc.*,
    486 B.R. 728 (Bankr. N.D. Tex. 2012) ............................................... 15

*J-L Chieftain, Inc. v. Western Skyways, Inc.*,
    351 F. Supp. 2d 587 (E.D. Tex. 2004) ............................................... 10

*Jobe v. ATR Marketing Inc.*,
    87 F.3d 751 (5th Cir. 1996) ................................................................ 8

*Johnson v. City of Shelby, MS*,
    574 U.S. 10 (2014) ............................................................................ 1

*Johnston v. Multidata Sys. Int'l. Corp.*,
    523 F.3d 602 (5th Cir. 2008) ........................................................... 1, 9

*Kelly v. Gen. Interior Const., Inc.*,
    301 S.W.3d 653 (Tex. 2010)..................................................................1, 7, 12

*Kowal v. MCI Communications Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ........................................................................15

*Littell v. H.I.S.D.*,
    894 F.3d 616 (5th Cir. 2018) ............................................................................2

*Lycoming Engines v. Superior Air Parts, Inc.*,
    2014 WL 1976757 (N.D. Tex. May 15, 2014) ................................................15

*M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*,
    512 S.W.3d 878 (Tex. 2017)..............................................................................7

*Marmon v. Mustang Aviation Inc.*,
    437 S.W.2d 182 (Tex. 1968)..............................................................................2

*Moncrief Oil Int'l v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007) ..........................................................................12

*Moore v. Carrington Morg. Svces. LLC*,
    2018 WL 3853711 (N.D. Tex. July 17, 2018) ........................................1, 2, 3, 13

*Moreno v. Ethicon, Inc.*,
    2022 WL 831548 (S.D. Tex. March 17, 2022) ..................................................2

*Nuance Commc's, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010)........................................................................7

*Panther Sys. II, Ltd. v. Panther Comput. Sys., Inc.*,
    783 F. Supp. 53 (E.D.N.Y. 1991) ....................................................................17

*Reliable Consultants, Inc. v. Earle*,
    517 F.3d 738 (5th Cir. 2008) ............................................................................8

*S. Leasing Partners, Ltd. v. McMullan*,
    801 F.2d 783 (5th Cir. 1986) ..........................................................................13

*Schlobohm v. Schapiro*,
    784 S.W.2d 355 (Tex. 1990)..............................................................................7

*Siskind v. Villa Found. for Educ., Inc.*
    642 S.W.2d 434 (Tex. 1982)..............................................................................7

*Smith v. Bank of America, N.A.*,
    615 F. App'x 830 (5th Cir. 2015) ......................................................................3

*Sollberger v. Wachovia Sec., LLC*,
    2010 WL 2674456 (C.D. Cal. June 30, 2010) ........................................................13

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ..............................................................................10

*Suckafree Recs. v. OarFin Distribution*,
    2013 WL 12158149 (S.D. Tex. 2013) ......................................................................9

*Telecom, Inc. v. MCI Telecomms. Corp.*,
    197 F.3d 694 (5th Cir. 1999) ..................................................................................9

*Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*,
    219 S.W.3 563, 590 (Tex. App. – Austin 2007, pet. denied)..................................20

*Tilton v. Marshall*,
    925 S.W.2d (Tex. 1996)............................................................................................3

*Tuchman v. DSC Communications Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ................................................................................15

*United Servs. Auto. Ass'n v. Mitek Sys., Inc.*,
    289 F.R.D. 244 (W.D. Tex. 2013) ..........................................................................14

*Weiland v. Palm Beach County Sheriff's Office*,
    792 F.3d 1313 (11th Circuit 2015) ..........................................................................2

*Westwind Acquisitions Co., LLC v. Universal Weather & Aviation, Inc.*,
    668 F.2d 749 (E.D. VA. 2009)..................................................................................2

*Wilson v. Belin*,
    20 F.3d 644 (5th Cir. 1994) ....................................................................................8

*Zurich Am. Life Ins. Co. v. Nagel*,
    538 F. Supp. 3d 396 (S.D.N.Y. 2021)....................................................................14

**Statutes**

18 U.S.C. § 1836 et. seq. Defend Trade Secrets Act (DTSA) ...............................2, 4, 16

Texas Business & Commerce Code § 325.001 et. seq. Texas
    Anti-Phishing Act (TAPA) ................................................................. passim

**Rules**

Rule 8 ...............................................................................................................................1

Fed. R. of Civ. P. 12(b)(2) ....................................................................... passim

Fed. R. Civ. P. 12(b)(6)...................................................................................... passim

Rule 12(e)...........................................................................................................2

**Other Authorities**

Restatement (Second), Torts § 876 (c) ................................................................3

Defendant Rene Roland ("**Roland**") moves this Court for an Order dismissing him from this litigation for lack of personal jurisdiction pursuant to Fed. R. of Civ. P. 12(b)(2) and alternatively, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (the "**Motion**").

## I.        STATEMENT OF THE ISSUES

**ISSUE NO. 1.**  Whether the Court lacks personal jurisdiction over Roland in his individual capacity here when (a) he is a Canadian resident and not amenable to general jurisdiction in Texas; and (b) Plaintiff has failed to show he purposefully directed any activities (torts) to Texas to support specific jurisdiction?[1]

**ISSUES NO. 2.**  Whether the improper shotgun pleadings in Plaintiff's First Amended Complaint incorporating *all* allegations in every preceding paragraph cumulatively as the generic *factual basis for all causes of action* that otherwise consist only of conclusory allegations of the elements of each, are defective as failing to give Roland sufficient notice, and therefore fail to state a claim against him?[2]

**ISSUE NO. 3**.  Whether the improper shotgun pleadings in Plaintiff's First Amended Complaint's lumping all thirty (30) Defendants (including at least three individuals) together

---

[1] The general allegation that Roland "conducts business in Harris County, Texas and the torts alleged . . . took place in part in Harris County Texas" (FAC ¶ 9), will not support general personal jurisdiction over him in Texas. *Johnston v. Multidata Sys. Int'l. Corp.*, 523 F.3d 602, 610 (5th Cir. 2008). And without much more, it will not support specific jurisdiction over his person in Texas either. *See Kelly v. Gen. Interior Const., Inc*., 301 S.W.3d 653, 658 (Tex. 2010)( "[i]f the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction."); *Bavikatte v. Polar Latitudes, Inc*., 2015 WL 8489997, at *3 (W.D. Tex. 2015).

[2] "To survive a Motion to Dismiss under *Twombly* and *Iqbal*, a Plaintiff need only 'plead facts sufficient to show' that the claims asserted have 'substantive plausibility' by stating 'simply, concisely, and directly' the events Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, MS*, 574 U.S. 10, 12 (2014) . . . As opposed to the 'short and plain statement' requirement contemplated by Rule 8, shotgun pleadings contain several counts within a complaint with each count 'incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions'. [citations omitted] Such pleadings are subject to dismissal under Rule 12(b)(6) . . . because asserting claims in this manner – that is, 'by merely attaching a label and/or legal conclusion to no facts unique to that claim' – or, at best, threadbare unique facts – is not sufficient to state a claim that is plausible on its face.'". *Moore v. Carrington Morg. Svces. LLC*, 2018 WL 3853711 at *1 & 3-4 (N.D. Tex. July 17, 2018) and extensive cases cited therein.

without any distinction whatsoever in all of its plead causes of action are defective as failing to give sufficient notice to Roland as to the basis for each of Plaintiff's causes of action against him, and therefore fails to state a claim?[3]

**ISSUE NO. 4.**  Whether Plaintiff fails to invoke and/or to state a claim against Roland under the federal Defend Trade Secrets Act when its First Amended Complaint fails to allege any facts from which this Court can infer that it is an *owner* of a *protectable* trade secret within the meaning of that Act?[4]

**ISSUED NO. 5.**  Whether Plaintiffs fails to state a claim against Roland for violating the Texas Anti-Phishing Act because that Act has no extra-territorial applicability to the claims brought by Plaintiff, a Delaware LLC, for this Canadian Defendant's alleged acts occurring, if at all, outside of Texas?[5]

---

[3] "The fourth type of shotgun pleading included in *Weiland* is a complaint which includes multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which defendants the claim is brought against." *In re Ozcelebi*, 635 B.R. 467, 472 (Bkr. S.D. Tex. 2021) citing *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Circuit 2015). When a complaint fails to provide adequate notice because of shotgun pleadings, the Court may order the Plaintiffs to submit a more definite statement pursuant to Rule 12(e) (*Id.* at 473) or may dismiss them pursuant to Rule 12(b)(6). *Moore*, 2018 WL 3853711 at *4.

[4] "To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts sufficient to state a claim for relief that is plausible on its face." *Littell v. H.I.S.D.*, 894 F.3d 616, 622 (5th Cir. 2018) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts accept "the well-pleaded factual allegations in the complaint as true" but do "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir 2016). "Such pleadings are subject to dismissal under Rule 12(b)(6) because asserting claims in this manner . . . is not sufficient to state a claim that is plausible on this face." *Moreno v. Ethicon, Inc.*, 2022 WL 831548 at *1 (S.D. Tex. March 17, 2022) and cases cited therein.

[5] "It is axiomatic that 'no state can legislate except with reference to its own jurisdiction.' [citation omitted] Thus, the legislative power of one state is 'constrained by the need to respect the interests of other states.' [citations omitted] Accordingly, it is ordinarily presumed that state laws are intended to apply only within the state's territorial jurisdiction and not extra-territorially. Importantly, the Supreme Court of Texas has itself noted that a strong presumption exists that Texas statutes do not apply extra-territorially. [citation omitted] Indeed, in the absence of clear legislative intent to the contrary, Texas statues should be interpreted to apply only within the territorial jurisdiction of the state." *Westwind Acquisitions Co., LLC v. Universal Weather & Aviation, Inc.*, 668 F.2d 749, 752 (E.D. VA. 2009) *BMW of N. Am. Inc. v. Gore*, 517 U.S. 559, 571 (1996) and citing *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006) and *Marmon v. Mustang Aviation Inc.*, 437 S.W.2d 182, 187 (Tex. 1968). In *Coca-Cola*, the Texas Supreme Court "held that, even though conduct outside the state might implicate Texas' interest in protecting its consumers, the idea that [the Texas Anti-Trust Statute] thus applied extra-territorially was 'simply unreasonable.'" *Fund Texas Choice v. Paxton*, 2023 WL 2558143 at *13 (W.D. Tex. February 24, 2023). (quoting *Coca-Cola*, 2018 S.W.3d at 683).

**ISSUED NO. 6.** *Assuming arguendo* that the Texas Anti-Phishing Act is somehow applicable to any of Plaintiff's claims, then whether Plaintiff's First Amended Complaint's failure to allege any *facts* against Roland, other than conclusory legal allegations of the elements, results in a failure to state a claim against him for violating that Act?[6]

**ISSUE NO. 7.** Whether Plaintiff's failure to identity (a) any *specific* contracts interfered with, (b) any *specific* lost prospective business relationships, (c) the requisite independently tortious or unlawful acts allegedly committed by Roland, (d) *when* any of these allegedly unlawful or tortious acts by Roland occurred within the applicable two year statute of limitations, and (e) the required actual damages proximately caused by Roland's wrongful acts; therefore fails to state a cognizable claim for tortious interference with Plaintiff's existing contracts and/or with Plaintiff's prospective business relationships against him?[7]

**ISSUE NO. 8.** Whether Plaintiff's First Amended Complaint failed to state any cognizable claims for conspiracy and/or assisting and participating against Roland when it failed to state any of the requisite intentional tort claims against him to which these parasitic claims must attach?[8]

## II.      SUMMARY OF ARGUMENT

Dismissal of Roland pursuant to Fed. R. Civ. P. 12(b)(2) is appropriate for at least the following reasons. ***First***, Plaintiff, Broker Online Exchange LLC's ("**BOX**") has not plead any jurisdictional facts, even at a basic level in the First Amended Complaint ("**FAC**"), to establish

---

[6] *See* note 4, *supra*.

[7] The United States Supreme Court "has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the *factual* allegations in the complaint." *Smith v. Bank of America, N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (emphasis in original) (quoting *Johnson*, 574 U.S. at 12). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Moore*, 2018 WL 3853711 at *4 (quoting *Twombly*, 550 U.S. at 556). Pleadings that fail to meet this standard are subject to dismissal under Rule 12(b)(6). *Id.*

[8] *See*, notes 4&7, *supra*. "A defendant's liability for conspiracy depends on participation in some underlying tort. *Tilton v. Marshall*, 925 S.W.2d, 672, 681 (Tex. 1996). Because conspiracy itself requires intent, the required *tort* for conspiracy to attach must be an intentional tort. *Firestone Steel Prod. v. Barajas*, 927 S.W.2 608, 617 (Tex. 1996). To prove assisting and participating liability, the plaintiff must establish the primary actor committed a tort. *See*, Restatement (Second), Torts § 876 (c).

general jurisdiction; **Second**, since it is undisputed Roland is a Canadian resident, not a Texas resident, jurisdiction is negated; **Third**, BOX has not and cannot allege that Roland has engaged in sufficient suit-related conduct directed at Texas that could sustain specific jurisdiction over him.

Alternatively, should the Court determine that it has personal jurisdiction over Roland, which it does not, dismissal of the FAC is still required under Fed. R. Civ. P. 12(b)(6) because: **(1)** the FAC is an impermissible "shotgun pleading"; **(2)** the FAC fails to allege facts with the requisite specificity to state a claim against Roland; **(3)** even if the FAC states a claim against Roland, which it does not, BOX's claims for violation of the federal Defend Trade Secrets Act ("**DTSA**") and Texas Anti-Phishing Act ("**TAPA**") fail as a matter of law because BOX has no standing and even if it does, the TAPA does not apply; and **(4)** BOX's claims for tortious interference, conspiracy and "assisting and participating" fail as a matter of law.

## III.    THE NATURE AND STAGE OF THESE PROCEEDINGS

On August 9, 2022, BOX filed this suit against Konect Management, LLC ("**Konect**") and Michael Rizk ("**Rizk**") asserting a single cause of action for violation of the Defend Trade Secrets Act ("**DTSA**"). (Dkt. # 1).

On November 11, 2022, Konect and Rizk filed a Rule 12(b)(6) Motion to Dismiss for the reasons that BOX lacked standing under the DTSA and failed to allege any legally-valid trade secrets ("**Initial Motion to Dismiss**"). (Dkt # 12). On November 15, 2022, BOX filed a Joint Discovery/Case Management Plan ("**Plan**") stating in pertinent part that it anticipated no additional parties would be added to the action. (Dkt # 14 at ¶5). On November 17, 2022, the Court entered a Scheduling Order setting a deadline of February 28, 2023 for the parties to file Amended Pleadings. (Dkt # 17).

On May 12, 2023, before the Court ruled on the Initial Motion to Dismiss and nearly three months after the deadline to file Amended Pleadings expired, BOX filed an Unopposed Motion for Leave to file the FAC, which was granted on June 28, 2023.  (Dkt #s 31, 33). On June 28, 2023, despite having previously represented that no additional parties would be added to this lawsuit, BOX filed the FAC adding two new Defendants, Energy Broker Online LLC ("**EBO**") and Rene Roland ("**Roland**"), in his individual and personal capacity, along with five additional causes of action for violation of the Texas Anti-Phishing Act, tortious interference with existing contracts state law and prospective business relations, conspiracy, and "assisting and participating." (Dkt # 34 at pp. 27-33). While it is impossible to parse what claims BOX now brings against Roland, BOX's justification for adding Roland apparently was merely because it "appears" to BOX that EBO is "a continuation" of Konect and Rizk's unidentified businesses and BOX "found out" that he is also "acting as president of Konect."  (FAC at ¶¶ 14, 18).[9]

The FAC alleges that the Court has jurisdiction over all Defendants, including Roland, because ". . . each conducts business in Harris, County, Texas and the torts alleged herein took place in part in Harris, County, Texas." (FAC ¶ 9). The FAC, however, does not identify what "business" Roland conducts in Harris, County Texas nor does it specify **which part** of **which torts** were allegedly committed by him in Texas. *See* FAC, generally.

The FAC does not cure any of the deficiencies raised in the Initial Motion to Dismiss regarding the misappropriation claim nor does it allege any facts supporting the new claims now brought against Roland. Rather, all of the allegations in the FAC relative to the misappropriation and phishing claims are conclusory statements made either "on information and belief" or couched

---

[9] While BOX claimed in the Motion for Leave to Amend that the FAC contained "detailed explanations" that EBO is "simply a continuation of Konect and Rizk's allegedly unlawful business and the torts described in the Complaint" (Dkt # 31 at p.2), the FAC fails to allege any facts, let alone a detailed explanation, of any connection between Konect, Rizk, Roland, and EBO. *See* FAC, generally.

in terms such as "highly likely" and "it appears" amounting to nothing more than conjecture. (Comp. at ¶¶ 16, 23, 24-25, 27-28, 29, 35, 38;  FAC at ¶¶ 23, 25-26, 30, 34, 43, 44, 46-47, 63, 65, 68, 74, 77). Moreover, all of BOX's claims are built on the same flawed unsupported conclusory allegation previously alleged in the Complaint that "Defendants could not have had the information to send these phishing emails but for an illegal breach of BOX's security and misappropriation of BOX's trade secrets." (Comp. at ¶ 13; FAC at ¶ 20). Thus, while BOX again spends twelve pages discussing its own biased view regarding how Rizk and Konect allegedly conduct their business (FAC at pp. 11- 22)—all of which is pure speculation—the FAC still fails to allege any actual facts that state a cause of action against Roland.

BOX has sued Roland in his personal and individual capacity. (FAC¶¶ 6, 108-111 ). However, BOX has not and cannot allege any tortious acts committed by Roland in Texas because he currently is and has been at all times relevant to BOX's claims (including the date this suit was filed), a resident of Canada, and he has had no purposeful contacts with Texas. As set forth in his Declaration, Roland's contacts with Texas are not legally or factually sufficient to establish personal jurisdiction over him in this case. *See* Declaration of Roland attached hereto as **Exhibit A**.

Roland is a resident of Canada and is an employee and manager of Konect. (Decl. at ¶ 3). From the dates of his hire to the present, Roland has worked in Konect's remote offices in New York or Canada. (*Id.* at ¶ 5). In addition, Roland, in his individual capacity has absolutely no contacts with Texas, nor has BOX alleged any, that would subject him to personal jurisdiction in this state. With respect to Roland's personal capacity, he has sworn that:

> To my knowledge, in my individual and personal capacities, I have had no contact with individuals or companies in the State of Texas and have not had contacts that have impacted residents of the State of Texas. In my individual and personal capacity, I have not purposefully directed activities at Texas residents and I have

not purposefully availed myself of the privilege of conducting activities within the State of Texas.

(Decl. at ¶¶ 29-30).

## IV.    STANDARD OF REVIEW

### 1.    Fed. R. Civ. P. 12(b)(2)---Personal Jurisdiction

Rule 12(b)(2) authorizes a motion to dismiss based on the defense that a court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "A nonresident defendant is subject to the personal jurisdiction of Texas courts if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate federal and state constitutional due process guarantees." *Kelly v. Gen. Interior Const., Inc*., 301 S.W.3d 653, 657 (Tex. 2010); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990).

The inquiry for determining whether personal jurisdiction comports with due process is "whether the defendant purposefully established 'minimum contacts' in the forum State.'" *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017); *Nuance Commc's, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

The ". . . plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. . ." and ". . . the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly v. Gen. Interior Const., Inc*., 301 S.W.3d 653, 658 (Tex. 2010). "If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction. *See Siskind v. Villa Found. for Educ., Inc.* 642 S.W.2d 434, 438 (Tex. 1982).

Appellate courts review the determinations of personal jurisdiction *de novo*. *Wilson v. Belin*, 20 F.3d 644, 647-48 (5th Cir. 1994). Determining personal jurisdiction is not restricted to a plaintiff's pleadings, but includes affidavits, oral testimony and any recognized form of discovery. *Jobe v. ATR Marketing Inc.*, 87 F.3d 751, 753 (5th Cir. 1996).

**2.     Fed. R. Civ. P. 12(b)(6)—Failure to State a Claim**

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (internal citations omitted). In turn, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," and must "permit the court to infer more than the mere possibility of misconduct[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Otherwise, "the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotes and citations omitted). In turn, the court is not "bound to accept as true" those legal conclusions in a complaint that are "couched as factual allegations." *Iqbal*, 556 U.S. at 678.

## V.     ARGUMENT AND AUTHORITIES

**A.     Dismissal is Required Under Rule 12(b)(2) Because The Court Lacks Personal Jurisdiction Over Roland.**

### 1.     BOX Has Not and Cannot Allege General Jurisdiction.

This Court does not have general jurisdiction over Roland because BOX does not allege any facts establishing that he has continuous and systematic contact with Texas such that general jurisdiction attaches. BOX has not and cannot meet the onerous burden of showing that Roland conducted substantial activities within the forum, which is "a more demanding minimum contacts analysis than for specific jurisdiction." *BMC Software Corp, N.V. v. Marchand*, 83 S.W.3d 789, 797 (Tex. 2002).

Here, BOX merely alleges that Roland "conducts business in Harris County Texas." (FAC at ¶ 9). This allegation, however, is not only factually incorrect but is also too general to support the exercise of general jurisdiction.[10]

BOX has not and cannot establish a *prima facie* case of general jurisdiction because at the time BOX's action was filed and during all times relevant to the allegations in the action, Roland has not had "continuous and systematic" contacts with Texas. (Decl. at ¶¶ 10-30.) Indeed, BOX has failed to allege any "continuous and systematic" contacts with Texas by Roland in his individual and personal capacity. To the extent the BOX alleges such contacts, which it does not, as demonstrated by Roland's Declaration, he has affirmatively denied any such contacts. (Decl. at

---

[10] *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) ("[v]ague or generalized assertions which do not indicate the extent, duration, or frequency of contacts, will not be sufficient to establish general jurisdiction."); *see also Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) ( emphasizing that in order to confer general jurisdiction a defendant must have a business presence in Texas and it is not enough that a corporation do business with Texas); *Suckafree Recs. v. OarFin Distribution*, 2013 WL 12158149, at *4 (S.D. Tex. 2013) (granting motion to dismiss for lack of personal jurisdiction finding plaintiff failed to meet his initial burden to establish prima facie case of general jurisdiction where complaint alleged vague and overgeneralized assertions of contacts with State of Texas).

¶¶ 10-30). In turn, without evidence of such "continuous and systematic contacts," this Court does not have general jurisdiction over Roland.

Roland is not a resident of Texas. (Dec. at ¶ 2 ). Roland does not visit Texas nor does he conduct business in Texas.  (*Id*. at ¶¶ 10-11, 18-19, 28). Roland does not have any offices, agents or employees in Texas or own property or pay taxes in Texas.  (*Id*. at ¶¶ 16-17, 23-24, 26 ). Accordingly, BOX has not and cannot allege minimum contacts sufficient to establish general jurisdiction. *See J-L Chieftain, Inc. v. Western Skyways, Inc*., 351 F. Supp. 2d 587, 595 (E.D. Tex. 2004) (despite "laundry list" contacts with Texas, where defendant did not have offices, employees, or agent in Texas, did not own property in Texas, and did not pay taxes in Texas, there was no "systematic and continuous relationship" between defendant and Texas sufficient to confer general jurisdiction). While none are actually alleged, any contacts by Roland with Texas as an agent of Konect are insufficient to establish jurisdiction as to Roland. *See e.g., Garcia v. Peterson*, 319 F. Supp. 3d 863, 888 (S.D. Tex. 2018) ("[e]ach defendant's contacts with the forum must be analyzed individually, and a defendant cannot be subject to personal jurisdiction solely because he [or she] participated in an alleged conspiracy with a co-conspirator who had contacts with Texas.")

Further, BOX has sued Roland in his individual capacity, but BOX's allegations acknowledge he was acting in his capacity as an employee and agent of Konect. As such, BOX may not establish jurisdiction by simply pointing to any actions taken in relation to Texas by Roland in his representative capacity as an employee and agent of Konect. Only those contacts that Roland has purposefully made in his individual capacity are relevant to the Court's jurisdictional determination. It is Roland's individual contacts with Texas that are to be measured and not his alleged contacts as Konect's alleged representative. *See Stuart v. Spademan,* 772 F.2d

1185, 1197 (5th Cir. 1985); *see also House v. 22 Texas Services, Inc.,* 60 F. Supp. 2nd 602, 609 (S.D. Tex. 1999). Accordingly, this Court may not exercise general jurisdiction over Roland.

### 2. This Court Lacks Specific Jurisdiction Because Roland Has Not Purposefully Directed Any Activity Relating To This Litigation At the State of Texas

BOX has failed to plead any facts bringing Roland within the reach of the Texas long-arm statute because the FAC does not allege that Roland committed any tortious acts in Texas. *See* FAC, *generally*. While the FAC alleges that BOX had contracts with its broker-customers and business relationships that were the subject of Roland's purported tortious interference BOX does not allege any actual conduct on his part that occurred in Texas or that any of the contracts allegedly interfered with were entered into in Texas by Texas residents. (FAC ¶¶ 90, 96).

In addition, although BOX alleges general claims for wrongdoing relating to misappropriation and phishing against all Defendants collectively, it has not alleged that any acts on the part of Roland, individually, for this to infer that those claims occurred in Texas. In particular, with respect to the misappropriation claim, while the FAC alleges (albeit on information and belief) that all of the Defendants either illegally breached BOX's security and/or unlawfully accessed the BOX's My Service Cloud ("**MSC**") (*Id.* at ¶¶ 20, 74) the FAC alleges that it was *Konect*—not Roland—who *attempted* to login to the MSC (*Id.* at ¶ 24). The FAC does not allege that the MSC was maintained in Texas or that Roland accessed or attempted to access the MSC or breached BOX's security from Texas.

The FAC likewise does not allege that Roland was the source of or sent the alleged phishing emails or any conduct on his part giving rise to those claims occurred in Texas. Rather, Box alleges Konect and Rizk "appear" to be the source of the phishing emails and that it is "highly likely" Konect is behind the phishing emails. (*Id.* at ¶¶ 19, 23, 26, 30, 34, 51). Further, while BOX alleges that the purported phishing emails were sent to its broker-clients' customers—not its own

customers—"located in Texas," it does not allege the purported phishing emails were sent by Roland from Texas or any conduct on his part relating to the transmission of those emails occurred in Texas.

BOX does not and cannot allege wrongful conduct on the part of Roland for misappropriating BOX's suppliers contact information because it does constitute a trade secret and such information does not belong to either BOX, its broker-clients, or its broker-clients' customers. Regardless, such a single event—contacting a public utility supplier—is unrelated to the instant action and therefore is insufficient to establish specific jurisdiction over Roland. *See Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 629 (11th Cir. 1994) (contracting to deliver cargo to a port in the forum state insufficient contact to exercise jurisdiction).

Accordingly, since BOX has failed to plead facts that Roland committed tortious acts in Texas sufficient to bring him within reach of the long-arm statute, Roland need only prove that he does not live in Texas to negate jurisdiction. Since it is undisputed Roland is not a resident of Texas, the Court cannot exercise personal jurisdiction over him.[11]

**B.      Dismissal is Required Under Rule 12(b)(6).**

**1.      The FAC Is An Impermissible "Shot Gun" Pleading.**

Should the Court determine it has personal jurisdiction over Roland, which it does not, the FAC should nonetheless be dismissed because it is a prototypical example of the widely

---

[11] *See Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010) ("[i]f the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction."); *Bavikatte v. Polar Latitudes, Inc.*, 2015 WL 8489997, at *3 (W.D. Tex. 2015); *see also Frank A. Smith Sales, Inc. v. Atl. Aero, Inc.*, 31 S.W.3d 742, 747 (Tex. App.-Corpus Christi 2000, no pet.) ("[The plaintiff's] third-party petition stated only that [the defendant] had committed acts of negligence, without specifying what those negligent acts were, or where they occurred. Therefore, [the] petition fell well short of pleading sufficient allegations to show jurisdiction in Texas.").

condemned "shotgun pleading." *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) (internal quotation marks omitted).

Here, BOX has "group pleaded" allegations against businesses and individuals for purported illegal and fraudulent acts without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. BOX uses the omnibus terms 'Defendants' without identifying what Roland specifically did wrong. *See Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). BOX posits a collection of general allegations toward the beginning of the FAC and then each count incorporates every antecedent allegation by reference. (FAC at ¶¶ 70, 80, 89, 94, 98, 104). This is improper. *See e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1129 (11th Cir. 2001)). Moreover, after roughly 34 pages of rambling allegations—12 pages which have nothing to do with either the claims alleged or Roland—BOX then begins its first claim for misappropriation by stating "BOX incorporates by reference the preceding Paragraphs of this Complaint as if the same were set forth in full herein." (*Id*. at ¶ 70). All of the subsequent claims, including those sounding in tort, include that very same language. (*Id*. at ¶¶ 780, 89, 94, 98, 104). "This language is certainly the type frequently dismissed by courts as an impermissible shotgun pleading." *In re Ozcelebi*, 635 B.R. 467, 474 (Bankr. S.D. Tex. 2021).

Accordingly, the FAC is subject to dismissal under Rule 12(b)(6)" because "asserting claims in this manner—that is, by merely attaching a label and/or legal conclusion to no facts unique to that claim—or, at best, threadbare unique facts—is not sufficient to state a claim that is plausible on its face." *Moore v. Carrington Mortg. Servs., LLC*, 2018 WL 3853711, at *4 (N.D. Tex. July 17, 2018). There is no way for Roland to respond to the FAC, let alone defend against it, because it is impossible to ascertain what claims are being brought against him since all of

BOX's claims constitute impermissible shotgun pleadings violating Rules 8(a)(2), 9(b), and 10(b). Consequently, for this reason alone the FAC should be dismissed.

### 2. BOX Has Not And Cannot State a Claim Against Roland for Violation of the DTSA. (Claim A)

The FAC fails to allege a legally protectable trade secret because the categories of information alleged by BOX are insufficiently precise to demonstrate (1) the existence of a protectable trade secret under the DTSA, that is (2) **owned** by BOX.  *See e.g.  Zurich Am. Life Ins. Co. v. Nagel,* 538 F. Supp. 3d 396 (S.D.N.Y. 2021) (holding "nebulous descriptions" of general categories of information and data as trade secrets does not state a claim under the DTSA). The FAC merely alleges the trade secrets are categories of information that belong not to BOX but to its broker-clients' customers, i.e., contact information, customers' current and prior electricity suppliers, and "details and terms" regarding electricity contracts. (FAC at ¶ 12). In turn, BOX has failed to meet its burden of identifying the trade secrets because "'[c]atchall' phrases or mere 'categories' of trade secrets are inadequate." *Brown & Root Indus. Servs., LLC v. Brown*, 2022 WL 4492087, at *5 (M.D. La. Sept. 9, 2022) (internal quotations omitted); *see also United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 248-49 (W.D. Tex. 2013) (plaintiff asserting claim of misappropriation is required, before commencement of discovery, to separately break out each individual trade secret it contended that defendant misappropriated, and to identify all such claims with sufficient particularity so that reader could understand how each such claim differed from public domain information).[12] Further, the FAC fails to allege a sufficient factual basis supporting

---

[12] Notably, while BOX alleges that Defendants sent emails both independently and via DocuSign, there is no allegation that any of the emails purportedly sent by Defendants allegedly using fictitious names contained BOX's broker-clients' customers account numbers or utility contract dates. (FAC at ¶19).

the allegation stated upon information and belief that any of the Defendants, including Roland, obtained the purported trade secrets by improper means.[13]

Here, BOX's misappropriation claim is premised on the conclusory allegation that "Defendants" could not have had access to the information—which BOX concedes belongs to its clients-customers and not to BOX—unless some how they illegally breached BOX's security or accessed BOX's My Service Cloud ("**MSC**"). (FAC at ¶¶ 20, 74, 77). Of course, BOX never says **how** Roland (or anyone else for that matter) actually did either of those things. And the few facts that BOX does allege are either vague or entirely speculative. Given the vague and conflicting allegations in the FAC, it is unclear whether BOX claims that Roland obtained the information by breaching "BOX's security" or by "accessing" the MSC. (FAC at ¶¶ 12-13, 20, 24, 70, 74). Specifically, the FAC initially alleges that "Plaintiff's investigation reveals **Konect attempted to log into [the MSC]**" but there is no allegation that Roland attempted to or did login to the MSC. Similarly, there is no allegation in the FAC that any information was obtained by Roland as a result of the unsuccessful attempted log in. (*Id*. at ¶ 24). Further, while the FAC later alleges Defendants collectively "unlawfully accessed" the MSC on information and belief it fails to allege any facts describing Roland's "unlawful access," including **when** it allegedly occurred or **what**, if any, information he wrongfully obtained. (*Id*. at ¶ 74).[14]

---

[13] *See Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (while fraud may be plead on information and belief under certain circumstances it "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations."); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994) (even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief).

[14] *See e.g., In re Superior Air Parts, Inc*., 486 B.R. 728, 741 (Bankr. N.D. Tex. 2012), aff'd sub nom. *Lycoming Engines v. Superior Air Parts, Inc*., 2014 WL 1976757 (N.D. Tex. May 15, 2014) (finding plaintiff failed to allege any facts supporting their claim that defendant obtained trade secrets by improper means where the plaintiff did not provide any description of the alleged improper conduct).

**3.** **Even if the FAC States a Claim, BOX's Claim Under the DTSA Fails as a Matter of Law Because It Lacks Standing And The Information Allegedly Wrongfully Obtained Is Not A Legally Protectable Trade Secret.**

"Under Texas law, as under federal law, the standing inquiry begins with the plaintiff's alleged injury." *Heckman v. Williamson Cnty*., 369 S.W.3d 137, 155 (Tex. 2012); *see also Holcomb v. Waller Cnty.*, 546 S.W.3d 833, 837 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("[w]e begin our [standing] analysis by identifying the alleged wrong and deciding whether there was a causal connection between the defendant's actions and the injury caused by the alleged wrong."). The plain language of the DTSA explicitly states that only "[a]n ***owner*** of a trade secret that is misappropriated may bring a civil action under this subsection . . ." 18 U.S.C. § 1836(b)(1) (emphasis added). BOX cannot establish that it owns the alleged trade secrets because the FAC alleges the information allegedly improperly obtained "related to [BOX's clients] respective customer" and belongs to BOX's broker-clients—not to BOX. (FAC at ¶ 12). Thus, because BOX is not an owner of the alleged trade secrets it therefore does not have standing under the DTSA. *See e.g., Heckman*, 369 S.W.3d at 154-55 ("the plaintiff must be ***personally injured***" and that injury "must be concrete and particularized, actual or imminent, not hypothetical").

Even if the Court finds that BOX has standing under the DTSA, which it does not, BOX's misappropriation claim still fails as a matter of law because it has not and cannot prove a legally protectable trade secret exists. *Calisi v. Unified Fin. Servs., LLC,* 232 Ariz. 103, 106 (Ct. App. 2013). Here, BOX has defined its trade secrets as customer information such as customers' contact information, customers' current and previous electricity suppliers, and details of customers' current and previous electric contracts. (FAC at ¶ 12) However, "the identities of [plaintiff's] customer and vendors and relationships formed with them are not trade secrets as a matter of law

. . ." *Baxter & Assoc.'s, LLC v. D&D Elevators, Inc.*, 2017 WL 604043, at *9 (Tex. App.--Dallas 2017.)[15]

### C.   BOX Has Not And Cannot State a Claim Against Roland for Violation of the Texas Anti-Phishing Act. (Claim B)

#### 1.   BOX's TAPA Claim is Factually Deficient on its Face.

Like BOX's claim for misappropriation, its claim for violation of the TAPA is built entirely on a speculative and conclusory allegation (based on information and belief) that "it is highly likely" that Konect is behind the phishing emails. (FAC at ¶¶ 25-26, 30, 34, 63). BOX not only fails to plead facts in support of that conclusion, it fails to identify the names of the customers who purportedly received the phishing emails, when the emails were sent or received, or that any specific recipient is a Texas resident. (FAC at ¶¶ 21, 44, 49, 52-63). There is not a single allegation in the FAC that Roland, in his individual or personal capacity, sent the purported phishing emails. Similarly, there is no allegation in the FAC that Roland, in his capacity as an agent or employee of Konect, knew that Konect or Rizk sent the purported phishing emails.

Further, while the FAC alleges Defendants collectively used eight (8) IP addresses and twenty-one (21) allegedly fake aliases and business names to send purported the phishing emails these allegations are too attenuated to meet the requisite pleading standards on their face. (FAC at ¶¶ 23-35) Indeed, there is not a single allegation in the FAC that Roland owned or used the devices associated with the IP addresses. In fact, the allegations in the FAC establish that BOX does not

---

[15] S*ee also Duo-Fast Carolinas, Inc. v. Scott's Hill Hardware & Supply Co.*, 2018 WL 264607 at * 6-7 (N.C. Super. Jan. 2, 2018) (finding customer lists comprising of ". . . current and potential customer information such as customer names and contact information, historical sales data, product pricing, and product preference and usage" and "vendor information" are not trade secrets because information is easily available to public). In turn, BOX cannot establish a trade secret because the information allegedly misappropriated is readily ascertainable through the internet, trade shows, or the yellow pages. *See e.g., A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 909, 916 (S.D. Tex. 2015) (where names and addresses of customers and vendors on a party's customer or vendor list are "readily ascertainable," the list is not protectable as a trade secret); *see also Panther Sys. II, Ltd. v. Panther Comput. Sys., Inc.*, 783 F. Supp. 53, 67 (E.D.N.Y. 1991) ("names of customers ascertainable through public sources will not be protected as trade secrets").

even know who owns or used the devices tied to the IP addresses. ( FAC at ¶¶ 25, 30). Moreover, while BOX makes the conclusory allegation that "Defendants created fake identifies and fake business names" (FAC at ¶19) it fails to allege any facts setting forth *who* created them, *when* they were created, or *how* they were created. (FAC at ¶¶ 24-35). There is not a single allegation in the FAC that Roland, either in his individual or personal capacity, or as an employee of Konect created or used them. In fact, BOX fails to plead any facts showing that any of the allegedly fake individuals or businesses are not real third-parties. BOX expects this Court to simply assume the individuals and businesses are fake simply because it says so.

Finally, BOX fails to allege any wrongful conduct by Defendants that proximately caused its alleged injuries, i.e., lost profits as a result of brokers' unwillingness to work with BOX. (FAC at ¶87). The FAC does not identify those who allegedly received the purported phishing emails or the "brokers" who allegedly are unwilling to work with BOX. The FAC likewise is void of any factual allegations showing that the brokers who allegedly are unwilling to do business with BOX actually received the alleged phishing emails or that a particular email proximately caused them either not to do business with BOX or to breach an actual contractual obligation it owed by BOX. In turn, BOX has failed to state a cause of action for violation of the TAPA.

### 2.      BOX's Claim for Violation of the TAPA Fails as a Matter of Law.

BOX does not have standing under the TAPA because it was not damaged by the alleged prohibited acts committed by Roland. *See* Tex. Bus. & Comm. Code § 325.006. BOX admits that the recipients of the purported phishing emails were "***potential customers***" or "***consumers***"—not BOX itself, BOX's broker-clients, or its broker-clients' customers. (FAC at ¶ 19). BOX cannot establish any alleged injury that is "fairly traceable" to Roland since it has not alleged that he or Konect owned or used the devices associated with the IP addresses where the emails were sent

from. *See Heckman*, 369 S.W.3d 137 at 155 ("Court act only to redress injury that fairly can be traced to the challenged action of the defendant, *and not injury that results from the **independent action of some third party not before the court**.*")

Even if BOX has standing under the TAPA, which it does not, it's claim still fails because the alleged conduct took place (if at all) outside of Texas and the TAPA has no extraterritorial effect.[16] *See* e.g., *Fund Texas Choice v. Paxton*, 2023 WL 2558143, at *13 (W.D. Tex. Feb. 24, 2023) ("it is settled law in Texas that a law will not be given extraterritorial effect unless such intent is clear.) The geolocation data associated with the IP addresses where BOX alleges the purported phishing emails were sent from confirms none were sent from Texas. Accordingly, even assuming Roland caused the purported phishing emails to be sent to some unknown person or entity in Texas (**none** of which is alleged) the TAPA cannot apply extraterritorially against Roland—a Canadian resident. *See e.g., Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671 (Tex. 2006) (holding that even though conduct outside the state might implicate Texas's interest in protecting its consumers, the idea that the [Texas] statute thus applied extraterritorially was simply unreasonable"). BOX makes no allegation that Roland, either individually or as an agent of Konect, intended to defraud or steal anything that belonged to BOX let alone the alleged recipients of the purported phishing emails, all of whom were third-parties with no alleged contractual or legal relation to BOX. Accordingly, BOX's TAPA claim must be dismissed.[17]

---

[16] Although the FAC contains no allegation that Roland, individually or as an agent of Konect, created a webpage without the authorization of the business owner or any facts showing that any of the alleged alias or business are in fact fake or were created by Roland, BOX nonetheless alleges that Defendants sent emails containing links to a web page that was represented as being associated with a legitimate online business. (FAC at ¶ 83).

[17] *See e.g., Haley v. H&R Block Enterprises, L.L.C.*, 2011 WL 13063872, at *1 (Tex. Dist. Aug. 22, 2011) (granting defendants' motion for summary judgment and dismissing claims for violation of the Anti-Phishing Act where defendant argued plaintiff lacked standing and there was no evidence or defendants created a deceptive website or sent deceptive emails).

### D.  BOX Has Not And Cannot State a Claim Against Roland for Tortious Interference, Conspiracy, Or Assisting and Participating (Claims C-F)

BOX's tortious interference claims fail as a matter of law because it has not and cannot allege any contract or business relationship between BOX and its broker-clients [or even BOX and its broker-clients' customers] that Roland, either individually or as an agent of Konect, interfered with since the purported phishing emails were received by unidentified two-step removed third parties, i.e., BOX's broker-clients' customers with whom BOX had no contractual relationship with.  *See e.g., WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 357 (5th Cir. 2021). ("[u]nder Texas law, to prevail on claim for tortious interference with contractual relations, the plaintiff must present evidence that some obligatory provision of a contract was breached."); *see also Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3 563, 590 (Tex. App. – Austin 2007, pet. denied).

Consequently, because BOX's claims for misappropriation and tortious interference against Roland fail as a matter of law for the reasons set forth *supra* BOX's claims for conspiracy and "assisting and participating" fail along with them.[18]

## VI.    CONCLUSION

Defendant, Rene Roland respectfully requests this Court to (1) enter an order dismissing Plaintiff Broker Online Exchange LLC's First Amended Complaint against him for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); or alternatively, (2) enter an order dismissing the First Amended Complaint against Roland pursuant to Fed. R. Civ. P. 12(b)(6) (3) and awarding him all such other and further relief to which he may be justly entitled.

---

[18] *See Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140-41 (Tex. 2019) ("civil conspiracy [is] a 'derivative tort,' meaning it depends on some underlying tort or other illegal act."); *see also Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 930–31 (Tex. 2010) (if the tort claim fails, the assisting-or-encouraging claim also fails.); *WickFire*, 989 F.3d 343 at 358 ("[d]erivative in this context means a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it.").

Dated this 31st day of July 2023         By: */s/ Bruce Stanfill*
                                          Wm. Bruce Stanfill
                                          Texas Bar No. 19034350
                                          Southern District Bar No. 8889
                                          Akerman LLP
                                          1300 Post Oak Blvd., Suite 2300
                                          Houston, TX 77056
                                          (713) 623-0887
                                          bruce.stanfill@akerman.com

                                          Thomas G. Pasternak
                                          Admitted Pro Hac Vice
                                          Akerman LLP
                                          71 South Wacker Drive, 46th FL.
                                          Chicago, IL 60606
                                          Telephone:  (312) 634-5700
                                          Fax:  (312) 424-1900
                                          Email:  thomas.pasternak@akerman.com
                                          *Attorneys for Defendants Konect*
                                          *Energy, Michael Rizk and Rene Roland*

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for Defendants (Tom Pasternak) notified counsel for Plaintiff (Mark Levine) in writing by Defendants Konect and Rizk's First Motion to Dismiss, and then subsequently by telephone, of all Defendants' issues with the lack of specific factual allegations on particular causes of action and required components of those claims, especially as to Defendant Roland, but they were unable to reach agreement on a need for another amended complaint providing more specific factual details.

                                          *Thomas C. Pasternak*
                                          Thomas C. Pasternak

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2023, I filed the foregoing, **RENE ROLAND'S RULE**

**12(b)(2) and (b)(3) MOTION TO DISMISS** with the Court using the ECF system, which will

provide notice and a copy to counsel of record.

> Mark J. Levine
> State Bar No. 00791102
> Federal ID No. 20021
> WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
> 24 Greenway Plaza, Suite 2050
> Houston, Texas 77046
> Telephone: (713) 961-9045
> Facsimile: (713) 961-5341
> mlevine@wkpz.com

> */s/ Thomas G. Pasternak*
> Thomas G. Pasternak