IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BROKER ONLINE EXCHANGE, LLC. | § | |
| *Plaintiff* | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-02674 |
| | § | |
| KONECT MANAGEMENT, LLC, d/b/a | § | |
| KONECT ENERGY; MICHAEL RIZK f/k/a | § | |
| MICHAEL GERGUIS, and also using the aliases | § | |
| and business names, CHRISTOPHER HILL, | § | |
| CHUCK DEAN, SAM OLSEN, ALEX MILLER, | § | |
| ADAM REED, MICHAEL WALSH, JUSTIN | § | |
| WILLIAMS, RUDY KELLER, JOEY PANZINI, | § | |
| BETTER CLEAN ENERGY MANAGEMENT, | § | |
| BLUE CHIP ENERGY, ENERGY RENEWALS, | § | |
| ENERGY EXTENSIONS, CONTRACT | § | |
| RENEWALS, APPROVE ENERGY, THE | § | |
| ENERGY BROKERAGE, ENERGY ONE | § | |
| SOLUTIONS, GET ENERGY SOLUTIONS, TX | § | |
| RENEWALS, THE ENERGY SUPPLY, POWER | § | |
| GRID, POWER RENEWALS, ELECTRICITY | § | |
| RENEWAL AGREEMENT, and ELECTRICITY | § | |
| RENEWAL; | § | |
| ENERGY BROKER ONLINE LLC; RENE | § | |
| ROLAND; NIKLAUS SCHWENKER | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT RENE ROLAND'S RULE 12(b)(2) AND 12(b)(6) MOTION TO DISMISS

Plaintiff Broker Online Exchange, LLC ("Plaintiff" or "BOX") files this Response to

Defendant Rene Roland's ("Roland") Rule 12(b)(2) and 12(b)(6) Motion to Dismiss.

# Table of Contents

I.       STATEMENT OF THE ISSUES.........................................................................1

II.      SUMMARY OF ARGUMENTS.........................................................................2

III.     THE NATURE AND STAGE OF THE PROCEEDINGS...............................3

IV.      ARGUMENT AND AUTHORITIES.................................................................3

   A.   The Court has personal jurisdiction over Roland. ............................................3

   B.   Plaintiff properly stated its claims ...................................................................8

      1. The Complaint is not subject to dismissal for impermissible "shotgun pleading". ............9

      2. Plaintiff sufficiently alleged its DTSA claim. ...............................................12

      3. Plaintiff has standing to sue under the DTSA, and the subject trade secrets are legally protectable. ...............................................14

      4. Plaintiff properly states a claim against Roland for violation of TAPA ........................16

      5. Plaintiff's claims for tortious interference with existing contracts, tortious interference with prospective business relations, and conspiracy are properly stated.................................17

V.       CONCLUSION ...............................................................................................19

# TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*AKB Hendrick, LP v. Musgrave Enters.*,
  380 S.W.3d 221 (Tex. App.—Dallas 2012, no pet.) ............................................................. 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 9

*ATC Media, LLC v. Michaels Stores, Inc.*,
  2023 WL 5058837 (N.D. Tex. Aug. 7, 2023) ....................................................................... 10

*Bates v. Laminack*,
  938 F. Supp. 2d 649 (S.D. Tex. 2013) ............................................................................... 9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 8, 9

*Bhatia v. Dischino*,
  2011 WL 3820825, 2011 U.S. Dist. LEXIS 97339, *12 (N.D. Tex. Aug. 29, 2011) ........... 10

*Bureau Veritas Commodities and Trade Inc. v. Cotecna Inspection SA*,
  *2022 WL 912781* (S.D. Tex. March 29, 2022) ................................................................... 13

*Cappuccitti v. Gulf Indus. Products, Inc.*,
  222 S.W.3d 468 (Tex. App. Houston [1st Dist.] 2007) ....................................................... 4, 5

*Carson v. Maersk, Ltd.*,
  61 F. Supp. 2d 607 (S.D. Tex. 1999) ..................................................................................... 5

*Clapper v. Am. Realty Invs., Inc.*,
  2015 WL 3504856 (N.D. Tex. 2015) ................................................................................... 10

*Cloud v. United States*,
  536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002) ....................................................... 9

*Compaq Computer Corp. v. Ergonome Inc.*,
  387 F.3d 403, 65 Fed. R. Evid. Serv. 582, 59 Fed. R. Serv. 3d 944 (5th Cir. 2004) ............. 5

*Cotiviti, Inc. v. HMS Holdings Corp.*,
  2020 WL 13430177 (N.D. Tex. Sep. 8, 2020) ..................................................................... 13

*DBG Group Investments, LLC v. Puradigm, LLC*,
  2022 WL 313435 (N.D. Tex. Feb. 2, 2022) ......................................................................... 14

*De Liverpool, S.A. De C.V. v. Servi Mundo Llantero S.A. De C.V.*,
  82 S.W.3d 622 (Tex. App. Corpus Christi 2002) ................................................................... 5

*DTM Research, LLC v. AT&T Corp.*,
   245 F.3d 327 (4th Cir. 2001) ................................................................................. 14

*Ellison v. Daldalyan*,
   2023 WL 2277127 (S.D. Tex. Feb. 28, 2023) ...................................................... 3, 4

*GlobeRanger Corp. v. Software AG United States of Am., Inc.*,
   836 F.3d 477 (5th Cir. 2016) ................................................................................. 12

*Graduate Med. Educ. Dev., LLC v. St. George's Univ., Ltd.*,
   2016 WL 5844707 (S.D. Tex. Oct. 6, 2016) ........................................................... 5

*Grand Aerie Fraternal Order of Eagles v. Haygood*,
   402 S.W.3d 766 (Tex. App. Eastland 2013) ........................................................... 5

*Hughes v. Houston Nw. Med. Ctr., Inc.*,
   680 S.W.2d 838 (Tex. App.—Houston [1st Dist.] 1984, *writ ref'd n.r.e.* ............. 19

*Humana, Inc. v. Shrader & Assocs., LLP*,
   584 B.R. 658 (S.D. Tex. 2018) ............................................................................... 9

*I & JC Corp. v. Helen of Troy L.P.*,
   164 S.W.3d 877 (Tex. App. El Paso 2005) .......................................................... 4, 5

*In re Cayman Island Firm of Deloitte & Touche*,
   2001 WL 1042233 (Tex. App.—San Antonio Sept. 12, 2001, no pet.) .................. 14

*In re Chinese-Manufactured Drywall Products Liability Litigation*,
   753 F.3d 521 (5th Cir. 2014) ................................................................................... 4

*Mullins v. TestAmerica, Inc.*,
   564 F.3d 386 (5th Cir. 2009) ............................................................................... 3, 4

*NTGSH JV, LLC v. Williams*,
   2021 WL 4440325 (S.D. Tex. Sept. 22, 2021) .................................................... 15

*Penthol LLC v. Vertex Energy Operating, LLC*,
   2021 WL 3571243 (S.D. Tex. Aug. 12, 2021) ..................................................... 13

*Reed Migraine Ctrs. of Tex., PLLC v. Chapman*,
   2015 WL 11120872 (N.D. Tex. 2015) ............................................................. 10, 14

*Schlobohm v. Schapiro*,
   784 S.W.2d 355 (Tex.1990) ................................................................................... 4

*Seelbach v. Clubb*,
   7 S.W.3d 749 (Tex. App.—Texarkana 1999, pet. denied) .................................... 18

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
   509 F.3d 673 (5th Cir. 2007) ................................................................................... 9

*Tabacinic v. Frazier*,
    372 S.W.3d 658 (Tex. App.-Dallas 2012, no pet.) ................................................................ 5

*Tippett v. Hart*,
    497 S.W.2d 606 (Tex. App.—Amarillo 1973) ...................................................................... 18

*Wein Air Alaska Inc. v. Brandt*,
    195 F.3d 208 (5th Cir. 1999) ............................................................................................. 4

*Well Cell Global LLC v. Calvit*,
    2022 WL 16857060 (S.D. Tex. Nov. 10, 2022) ................................................................. 15

*Wellogix, Inc. v. Accenture, L.L.P.*,
    716 F.3d 867 (5th Cir. 2013) ............................................................................................. 12

*Williams Consol. I, Ltd. v. Smith*,
    2009 WL 10698215 (S.D. Tex. Oct. 19, 2009) ................................................................ 14, 15

## Statutes

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 .......................................................................... 4

## Rules

Federal Rule of Civil Procedure 8(a) ....................................................................................... 10

## I.     STATEMENT OF THE ISSUES

**Issue No. 1.** Whether the Court has personal jurisdiction over Roland when he used Defendant Konect Management LLC ("Konect"), which recently forfeited its corporate charter, as a tool and sham to perpetrate fraud?

**Issue No. 2.** Whether Plaintiff's First Amended Complaint ("Complaint") is an objectionable "shotgun pleading" when it (a) provides detailed facts set forth in __ individually numbered paragraphs that explain that Defendants (including Roland) were related to a specific illegal scheme; (b) explains that the subject misconduct is attributable to Defendants' collective operation of the scheme; (c) provides that Roland is using Konect (and its affiliate Energy Broker Online LLC ("Energy Broker Online")[1] as a sham to perpetrate fraud; (d) alleges that there is an alter ego relationship between Roland and Konect/Energy Broker Online; (e) presents facts and evidence establishing that to a great extent, the subject misconduct was committed under fake names; and (f) the alleged missing details can easily be discovered through Roland himself?[2]

**Issue No. 3.** Whether Plaintiff sufficiently states a claim against Roland under the federal Defend Trade Secrets Act ("DTSA") when the Complaint establishes ownership of a protectable trade secret by showing (a) Plaintiff is the owner of an online, cloud-based software internally developed by Plaintiff which is in and of itself a trade secret; (b) Plaintiff's clients' confidential information, including customer list, pricing, contracts, etc., resides on and is processed by

---

[1] Defendants ignore the allegations that tie Roland to Energy Broker Online's misconduct and his conspiracy with that entity. Defendant Energy Broker Online's answer was due on August 17th, but no responsive pleading has been filed.
[2] There are only 5 Defendants in this case, and not 30 as misstated by Roland in its Motion (Dkt. 38 p. 1).

Plaintiff's software; (c) Plaintiff has possession and knowledge of this confidential information through its close affiliation with the clients?

**Issue No. 4.** Whether Plaintiff sufficiently states a claim under Texas Anti-Phishing Act ("TAPA") against Roland when the Complaint establishes that Texas residents received phishing emails and links to fake websites from  Roland and his operation of Konect and Energy Broker Online in Texas?

**Issue No. 5.** Whether Plaintiff sufficiently states claims for tortious interference with the existing contracts and prospective business relations when the Complaint establishes that Defendants' phishing emails obstructed and caused damage to Plaintiff's contractual rights and obligations to its clients and suppliers?

**Issue No. 6.** Whether Plaintiff sufficiently states a claim for conspiracy against Roland when the Complaint establishes Roland acted in concert with other Defendants to misappropriate BOX's trade secrets and to tortiously interfere with its contracts and business relations?[3]

## II.    SUMMARY OF ARGUMENTS

Roland's Rule 12(b)(2) Motion should be denied. Roland used Konect as a mere tool and a sham to perpetrate fraud, therefore Konect's contacts with Texas should be imputed to Roland. Additionally, Konect forfeited its corporate charter (for tax delinquency) and Roland is now personally liable for Konect's torts and illegal transactions under Konect's name. Finally, to a great extent, the subject misconduct has been committed under fake names traceable to Roland's operation of Konect and Energy Broker Online.

Roland's Rule 12(b)(6) Motion should be denied because (1) the Complaint satisfies the pleading requirements, and cannot be considered an objectionable "shotgun pleading"; (2) BOX

---

[3] Contrary to Roland's misstatement (Dkt. 34 p. 3), Plaintiff did not assert an assisting and participating claim against Roland.

sufficiently state a claim under the DTSA and established its ownership of a protectable trade secrets; (3) BOX sufficiently states a claim under TAPA by showing that Texas residents systematically received phishing emails and links to fake websites, traceable to Roland's operation of a deceptive scheme; (4) Plaintiff pled sufficient facts to make it facially plausible that the phishing emails tortiously interfered with Plaintiff's existing contracts and prospective business relations; and (5) Plaintiff's sufficiently state a claim for conspiracy by establishing Roland's responsibility for the underlying DTSA and tortious interference claims.

### III.   THE NATURE AND STAGE OF THE PROCEEDINGS

BOX sued Defendants Konect Management, LLC and Michael Rizk for violation of the Defend Secrets Act on August 9, 2022. (Dkt. 1). Several months later, Plaintiff learned  that Roland (with Rizk and Konect) continued their unlawful activities after the initiation of this lawsuit in a conspiracy with Niklaus Schwenker, and Energy Broker Online. Upon discovery of these facts, Plaintiff amended its complaint, adding Roland, Schewenker, and Energy Broker Online to the suit. To this date, the Konect and Plaintiff have only exchanged written discovery requests but no documents have actually been produced.

### IV.   ARGUMENT AND AUTHORITIES

**A. The Court has personal jurisdiction over Roland.**

"A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with Fourteenth Amendment to the United States Constitution." *Ellison v. Daldalyan*, 2023 WL 2277127, *2 (S.D. Tex. Feb. 28, 2023) (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009)). "The two-part jurisdictional inquiry collapses into a single step in [Texas]

because the Texas long-arm statute extends to the limits of federal due process." *Id.*; Tex. Civ. Prac. & Rem. Code Ann. § 17.042; *see also   Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990); *Cappuccitti v. Gulf Indus. Products, Inc.*, 222 S.W.3d 468, 479 (Tex. App. Houston [1st Dist.] 2007). This means that any act by a non-resident defendant can constitute "doing business" in Texas for purposes of personal jurisdiction as long as the federal constitutional requirements of due process are satisfied. *I & JC Corp. v. Helen of Troy L.P.*, 164 S.W.3d 877, 855 (Tex. App. El Paso 2005).

"To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Ellison v. Daldalyan*, 2023 WL 2277127, *2 (citing *Mullins*, 564 F.3d at 398). "Minimum contacts" can enable the court to exercise either general personal jurisdiction or specific personal jurisdiction. *Mullins*, 564 F.3d at 398. "Specific jurisdiction exists when the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the defendant purposefully directed at the forum state." *Id.* "In contrast, general jurisdiction requires the defendant to have maintained 'continuous and systematic' contacts with the forum state." *Id.* "Once a plaintiff has established minimum contacts, the burden shifts to defendant to show the assertion of jurisdiction would be unfair. To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Wein Air Alaska Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

The theory of "piercing the corporate veil" can be applied to confer personal jurisdiction over non-resident corporate subsidiaries, affiliates, officers, or shareholders. *See In re Chinese-*

*Manufactured Drywall Products Liability Litigation*, 753 F.3d 521, 546 (5th Cir. 2014) (noting that the court may impute one entity's contacts to another entity for purposes of personal jurisdiction under an alter-ego theory); *Grand Aerie Fraternal Order of Eagles v. Haygood*, 402 S.W.3d 766, 778 (Tex. App. Eastland 2013), *rule 53.7(f) motion granted*, (Apr. 9, 2013) (acknowledging that a trial court can have personal jurisdiction over a nonresident defendant through jurisdictional veil-piercing); *Cappuccitti v. Gulf Indus. Products, Inc.*, 222 S.W.3d 468 (Tex. App. Houston [1st Dist.] 2007) (affirming the trial court's exercise of personal jurisdiction over the non-resident president of the company defendant through application of the alter ego theory); *I & JC Corp. v. Helen of Troy L.P.*, 164 S.W.3d 877 (Tex. App. El Paso 2005) (affirming personal jurisdiction through imputing one company's tortious conduct to the other company pursuant to the alter ego theory).

For purposes of personal jurisdiction, the veil piercing doctrine is relaxed. Plaintiff only needs to show that the corporation was a "shell," and there is no necessity for a finding of unfairness or wrongful conduct. *Enotingto De Liverpool, S.A. De C.V. v. Servi Mundo Llantero S.A. De C.V.*, 82 S.W.3d 622 (Tex. App. Corpus Christi 2002), *as supplemented on denial of reh'g en banc*, (Aug. 1, 2002); *Graduate Med. Educ. Dev., LLC v. St. George's Univ., Ltd.,* No. H-15-2641, 2016 WL 5844707, *6 (S.D. Tex. Oct. 6, 2016) (noting that alter ego test for purposes of attribution of minimum contact is less strict than that for liability). If a court has jurisdiction over an entity, it automatically has jurisdiction over the entity's alter egos. *See Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 65 Fed. R. Evid. Serv. 582, 59 Fed. R. Serv. 3d 944 (5th Cir. 2004); *Tabacinic v. Frazier*, 372 S.W.3d 658, 669 (Tex. App.-Dallas 2012, no pet.); *Carson v. Maersk, Ltd.*, 61 F. Supp. 2d 607, 611 (S.D. Tex. 1999) (denying the motion to dismiss for lack of personal jurisdiction based on an alter ego finding).

Here in this case, the personal jurisdiction of this Court over Defendant Konect is undisputed. Konect has not challenged personal jurisdiction as it conducts business in Texas, as does Energy Broker Online, which has not yet answered suit.

Plaintiff has pled sufficient facts and evidence to establish personal jurisdiction over Defendant Roland. (Dkt. 34). Roland and Rizk are using Konect and Energy Broker Online as shams to perpetrate fraud. (Dkt. 34 at pp. 2 and 32-33). There is an alter ego relationship between Roland, Rizk, and Konect/Energy Broker Online to the extent that Konect/Energy Broker Online are mere tools or business conduits of Roland and Rizk. (Dkt. 34 at pp. 32-33).

Both Roland and Rizk represent themselves as "president" of Konect. (Dkt. 34 at ¶¶ 14, 15, and 17). In his Declaration, Roland himself admitted that he is the manager of Konect. (Dkt. 38-1). Konect is registered with the Texas Secretary of State as a foreign limited liability company conducting business in the State of Texas. (Dkt. 34 at ¶2). Roland represented himself as the managing member of Konect to the Texas Secretary of State.



Roland represented himself as the president of Konect to the Public Utility Commission of Texas.



https://www.puc.texas.gov/industry/electric/directories/brk/report_brk.aspx?ID=BRSQL01DB1245983100003 (last visited Aug. 16, 2023).

A simple search on the website of the Public Utility Commission of Texas also reveals that in 2020, Rizk submitted a Broker Registration Application as a sole proprietor. Interestingly, the reported address is Konect's current physical address.

https://www.puc.texas.gov/industry/electric/directories/brk/report_brk.aspx?ID=BRSQL01DB1245907600001 (last visited Aug. 16, 2023).

Plaintiff's First Amended Petition provides numerous examples of Konect sending phishing emails to Plaintiff's customers, using fake business names, stealing content from Plaintiff BOX and other businesses. (Dkt. 34 at pp. 6-25). BOX also established that after the initiation of this suit, Konect decided to continue its deceptive business model under a new name, Energy Broker Online. (Dkt. 34 at pp. 25-27). Plaintiff also alleged that Rizk's misconduct must be imputed to Konect under both respondeat superior and ratification doctrines. (Dkt. 34 at pp. 33-35). The fact that Konect is just a sham entity is further supported by the Texas Secretary of State, which indicates that Konect is just a "fictious" name.



Not surprisingly, Defendant Roland's Motion to Dismiss completely ignores Plaintiff's allegations of alter ego and shame to perpetrate fraud. Since the Court's personal jurisdiction over Konect is undisputed, the Court must have personal jurisdiction over Roland. Additionally, Konect has been administratively dissolved for tax delinquency in its state of formation (Wyoming), meaning that Roland is now personally liable for his actions conducted as Konect.



https://wyobiz.wyo.gov/Business/FilingDetails.aspx?eFNum=125209238058234022106123197069244173166001107244 (last visited Aug. 19, 2023).

For these reasons, Plaintiff requests that the Court deny Roland's Rule 12(b)(2) Motion or in the alternative allow jurisdictional discovery and an opportunity to amend the Complaint.

**B. Plaintiff properly stated its claims.**

A plaintiff should plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). To rule on a Rule 12(b)(6) motion, the court should accept all well-pleaded facts in the plaintiff's complaint as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Cloud v. United States*, 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002).

### 1. The Complaint is not subject to dismissal for impermissible "shotgun pleading".

The general rules of pleading do not require specificity or particularity in a claim for relief that can be discovered. *Humana, Inc. v. Shrader & Assocs., LLP*, 584 B.R. 658, 672 (S.D. Tex. 2018). In *Humana*, several non-governmental insurers, sponsors, and administrators of ERISA filed a complaint against a law firm, requesting reimbursement of clients' asbestos-related medical costs out of settlement funds. The law firm moved to dismiss for impermissible "shotgun pleading", arguing that the complaint failed to specify which particular insurers alleged which particular types of claims based on which particular insureds. The court denied the motion to dismiss, holding that the complaint satisfied Rules 8(a) and 10(b) and that the alleged missing details could be discovered. *Id.* at 670-72.

"What makes a pleading a 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." *Bates v. Laminack*, 938 F. Supp. 2d 649, 667 (S.D. Tex. 2013) (holding that the complaints met the requirements of Rules 8(a) and 9(b)). "Multiple defendants' conduct may be lumped together if the plaintiff's

allegations elsewhere designate the nature of the defendants' relationship to a particular scheme and identify the defendants' role ...." *Id.* at 668 (quoting *Bhatia v. Dischino*, No. 3:09–CV–1086–B, 2011 WL 3820825, at *3–4, 2011 U.S. Dist. LEXIS 97339, *12 (N.D. Tex. Aug. 29, 2011).

"[P]laintiffs are permitted under federal procedure to allege that more than one defendant (i.e., a group of named defendants) committed the same alleged act." *Reed Migraine Ctrs. of Tex., PLLC v. Chapman*, 2015 WL 11120872, at *4 (N.D. Tex. 2015) (citing *Clapper v. Am. Realty Invs., Inc.*, 2015 WL 3504856, at *4 (N.D. Tex. 2015)). Federal Rule of Civil Procedure 8(a) does not require plaintiffs, " 'without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific [defendant].' " *Reed Migraine Ctrs. of Tex.*, PLLC, 2015 WL 11120872, at *4 (internal citation omitted); *see also ATC Media, LLC v. Michaels Stores, Inc.*, 2023 WL 5058837, at * 2 (N.D. Tex. Aug. 7, 2023) (denying the motion to dismiss, reasoning that the complaint properly put the defendants on notice that the plaintiff attributes the alleged misconduct to the defendants' joint operation as entities that operate collectively).

Plaintiff's Complaint provides 20 pages of detailed facts and evidence about Konect's business scheme, its relationship with Roland, Rizk, Niklaus Schwenker, and Energy Broker Online LLC. (Dkt. 34 at pp. 6-27). Plaintiff further asserted that Rizk, Roland, and Niklaus Schwenker's use of Energy Broker Online and Konect is a sham to perpetrate fraud and these alleged entities are mere tools or business conduit. (Dkt. 34 at 32-33). Roland once again decided to totally ignore these assertions in his Motion to Dismiss. (Dkt. 38).

Plaintiff then asserted claims for violations of Defend Trade Secrets Act, tortious interference with existing contracts, and tortious interference with prospective business Relations against <u>all</u> Defendants in this case. (Dkt. 27-31). BOX further alleged that Konect, Rizk, Energy

Broker Online, Roland, and Schwenker are all co-conspirators. (Dkt. 34 at p. 31). Finally, Plaintiff asserted the claim of assisting and participating <u>only</u> against Defendants Energy Broker Online and Schwenker. (Dkt. 34 at pp. 31-32).

Plaintiff's Complaint is sufficiently clear and plausible. The entire Motion to Dismiss is simply predicated on Roland's strategic interpretation of the concept of "individual capacity". (Dkt. 38-1).



In a nutshell, Roland believes that he was free to engage in any unlawful activities as long as such activities were covered under the fictitious veil of Konect. Additionally, the information and details Roland wished to see in Plaintiff's Complaint can all be discovered through Konect and Roland's own records, which it has failed to produce. On July 27, 2023, **four days** before filing of Roland's Motion to Dismiss, Konect responded to Plaintiff's Requests for Production merely by stating:

As indicated in Plaintiff's Complaint, this case is unique in that Defendants brazenly use fake aliases and made-up identities to send phishing emails. BOX pled a plethora of facts that

demonstrate Defendants are responsible for the illegal conduct. Whether Roland himself pushed the send button on the phishing emails or directed others in a conspiracy will be proven through discovery but is not required by the Rules at the pleading stage.

Therefore, Plaintiff requests that the Court deny Roland's Rule 12(b)(6) Motion or in the alternative allow Plaintiff's to amend its Complaint.

### 2. Plaintiff sufficiently alleged its DTSA claim.

Plaintiff's Complaint satisfies the facial plausibility standard of *Twombly* and *Iqbal*. BOX sufficiently pled facts to show that it owns trade secrets. BOX provides an online tool for energy brokers to obtain and provide independent price comparisons from a variety of suppliers. (Dkt. 34 ¶ 11). Plaintiff assists its clients (energy brokers) in procuring gas and electricity contracts with retail electric providers ("REPs") for their clients. (Dkt. 34 ¶ 11). Plaintiff's clients register information with Plaintiff related to their respective customers, including but not limited to, customers' contact information, customers' current and previous electricity suppliers, and details and terms of customers' current and previous electricity contracts. The stored information is not readily available to the public and belongs to both Plaintiff and its clients. (Dkt. 34 ¶ 12). Such information is stored in Plaintiff's My Service Cloud ("MSC"). MSC is an online, cloud-based software internally developed by Plaintiff to help its brokers manage their businesses. (Dkt. 34 ¶ 71). MSC's method of collection, organization, searchability, and retention of data is in and of itself Plaintiff's trade secrets. (Dkt. 34 ¶ 72).

Roland's disagreement about what constitutes Plaintiff's trade secrets only creates a fact question for the factfinder to ultimately decide. *See GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 492 (5th Cir. 2016) ("Whether a trade secret exists is a question of fact.") (citing *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013)).

The aforementioned allegations also sufficiently identify the subject trade secrets. In *Bureau Veritas Commodities and Trade Inc. v. Cotecna Inspection SA, 2022 WL 912781*, \*6-7 (S.D. Tex. March 29, 2022), this Court denied the defendant's Motion to Dismiss, holding that Plaintiff has satisfied its burden at the pleading stage. In support of its DTSA claims, the plaintiff asserted the following as trade secrets: "its profit and loss information, financial information, business plans, strategic growth strategies, sales information, operational weaknesses, marketing strategies, customer information, pricing, pricing strategies, sales volume, operational plans, employee compensation, vendor and contractor information, testing procedures, certificates, and laboratory technology." The defendant moved for dismissal arguing that the alleged trade secrets were vague and overbroad. Denying the motion, this Court reasoned that the plaintiff did not need to disclose detailed descriptions of its trade secrets in the pleading. Similarly, in *Penthol LLC v. Vertex Energy Operating, LLC*, 2021 WL 3571243, at \*5 (S.D. Tex. Aug. 12, 2021), this Court denied the motion to dismiss, where Plaintiff described its customer lists, purchase contracts, and business plans as its trade secrets. This Court reasoned that "these types of confidential items are sufficient to defeat a motion to dismiss." *Id.*

Plaintiff sufficiently pled facts to make the misappropriation claim facially plausible. Plaintiff alleged that Konect attempted to log into MSC. (Dkt. 34 ¶ 24). Konect took detailed confidential data and documents of the accounts registered with Plaintiff, created numerous fake identities, and used the data and documents to deceive various individuals and entities. (Dkt. 34 ¶¶ 19-23, 41-63). Plaintiff then alleged detailed facts establishing that all the fake identities were related to Konect's business operation. (Dkt. 34 ¶ 24-35) *See Cotiviti, Inc. v. HMS Holdings Corp.*, 2020 WL 13430177, at \*6 (N.D. Tex. Sep. 8, 2020) (finding that the plaintiff sufficiently alleged misappropriation of trade secrets where plaintiff provided examples of the trade secrets

and described the defendant's motivation for the alleged misappropriation); *DBG Group Investments, LLC v. Puradigm, LLC*, 2022 WL 313435, *3 (N.D. Tex. Feb. 2, 2022) (finding sufficient allegations of misappropriation where the plaintiff alleged that former employees had its proprietary formula prior to joining the defendant's company and that they incorporate the formula into the defendant's product.).

As fully discussed in previous sections, Konect is just a sham, and its misconduct should be imputed to Roland. Additionally, the use of fake identities makes it impossible to allege whether Roland himself accessed Plaintiff's MSC and drafted or sent any of the specific phishing emails identified in the Complaint. Plaintiff alleged sufficient facts to make it plausible that all Defendants are operating collectively, and Rule 8(a) does not require Plaintiff, "to connect every single alleged instance of misconduct in the complaint to every single specific [defendant]." *Reed Migraine Ctrs. of Tex., PLLC v. Chapman*, 2015 WL 11120872, at *4 (N.D. Tex. 2015) (internal citation omitted). Therefore, Plaintiff requests that the Court deny Roland's Rule 12(b)(6) Motion or in the alternative allow Plaintiff's to amend its Complaint.

### 3. Plaintiff has standing to sue under the DTSA, and the subject trade secrets are legally protectable.

"[O]ne 'owns' a trade secret when one knows of it, as long as it remains a secret." *In re Cayman Island Firm of Deloitte & Touche*, No. 04-01-00491-CV, 2001 WL 1042233, at *3 (Tex. App.—San Antonio Sept. 12, 2001, no pet.) (quoting *DTM Research, LLC v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001); *Williams Consol. I, Ltd. v. Smith*, No. 8-cv-766, 2009 WL 10698215, at *6 (S.D. Tex. Oct. 19, 2009) (same), *report and recommendation adopted*, No. 4:08-CV-766, 2009 WL 10698262 (S.D. Tex. Nov. 19, 2009); *Fast Capital Marketing, L.L.C. v. Fast Capital, L.L.C.*, No. H–08–2142, 2008 WL 5381309, at *12 (S.D. Tex. Dec. 24, 2008);

*NTGSH JV, LLC v. Williams*, No. 20-cv-2469, 2021 WL 4440325, at *2 (S.D. Tex. Sept. 22, 2021).

In *Williams Consol. I, Ltd. v. Smith*, the defendants argued that the plaintiff sustained no injury because the plaintiff was not the owner of the trade secret information. The court held that the plaintiff had standing because it only knew of the information through its confidential relationship with the legal owner. No. 8-cv-766, 2009 WL 10698215, at *6; *see also Well Cell Global LLC v. Calvit*, 2022 WL 16857060, at *6 (S.D. Tex. Nov. 10, 2022).

Similarly, in this case, Plaintiff and its clients are both owners of the trade secret information, i.e., the clients' respective customers' contact information, customers' current and previous electricity suppliers, and details and terms of customers' current and previous electricity contracts. (Dkt. 34 ¶ 12). Additionally, Plaintiff is the owner of the database (MSC) on which the aforementioned trade secrets reside. MSC's method of collection, organization, searchability, and retention of data is in and of itself Plaintiff's trade secrets. (Dkt. 34 ¶ 72). Therefore, regardless of the legal ownership of the data entered into MSC by each client, Plaintiff is the owner of the final format of such data after it has been collected, processed, and organized by MSC. The data in its final format has independent economic value.

As discussed in the previous section, the types of information and documents involved in this case are protectable trade secrets. Roland's disagreement only creates a factual question and cannot be a basis for dismissal at the pleading stage. Therefore, Plaintiff requests that the Court deny Roland's Rule 12(b)(6) Motion or in the alternative allow Plaintiff's to amend its Complaint.

### 4. Plaintiff properly states a claim against Roland for violation of TAPA.[4]

BOX pled more than sufficient facts to satisfy the facial plausibility standard for its TAPA claim. The Complaint provides detailed facts establishing that Konect was behind the phishing emails by tracing the IP address of Konect. (Dkt. 34 ¶¶ 24-35, 51, 19-23). BOX also provided samples of those phishing emails as Exhibits. (Dkt. 34, Exhibits A, B, C). Plaintiff then alleged facts and provided evidence showing that Konect took content from other websites and used it to create an Internet foothold for its fake businesses. (Dkt. 34 pp. 11-15). BOX is not required to disclose the identity of its broker-customers who received the phishing emails in a publicly available Complaint. Additionally, as fully discussed in previous sections, Plaintiff is not required to establish that Roland pushed the send button for any specific phishing email. Plaintiff provided more than sufficient facts showing that Defendants were collectively operating a deceptive business. The additional details Roland wished to see can easily be discovered, from the records in Roland's own possession, custody, and control.

With regard to damages, the Complaint states that "[a]s a result of Defendants' violation of the Texas Anti-Phishing Act, Plaintiff has suffered, and will continue to suffer, loss to its reputation and good will. Plaintiff has also sustained loss profits as a result of brokers' unwillingness to work with Plaintiff due to the phishing emails." (Dkt. 34 ¶ 87). Plaintiff alleged sufficient facts to make its claimed damages facially plausible. Plaintiff provides an online tool (MSC) for energy brokers to obtain and provide independent price comparisons from a variety of suppliers. (Dkt. 34 ¶ 11). Plaintiff assists its clients (energy brokers) in procuring gas and electricity contracts with retail electric providers ("REPs") for their clients. (Dkt. 34 ¶ 11). Receipt of numerous phishing emails containing detailed confidential information will raise

---

[4] Under this Section, Plaintiff addresses arguments in Sections C.1 and C.2 of Roland's Motion to Dismiss (Dkt. 38).

questions about the reliability and security of MSC and Plaintiff's business, harming Plaintiff's reputation in the industry and causing loss profits. Contrary to Roland's argument, Plaintiff is not required to disclose details of its damages and identity of its former brokers in a publicly available Complaint.

It appears that Roland is trying to use Rule 12(b)(6) as a tool to obtain free discovery in this case. This is certainly beyond the scope of the Rule. Plaintiff clearly alleged sufficient facts and provided evidence showing that the application of TAPA is proper in this case. Konect is registered with the Texas Secretary of State and does business in the State of Texas. The phishing emails were sent to Plaintiff's broker-customers in Texas: Houston, Tyler, Graham, League City, Dallas, Denison, Hutto, Odessa, Pantego, San Angelo, Hidalgo, and Katy. (Dkt. 34 ¶¶ 41, 44, 49, 52, 54, 55, 56, 60, and 61). Some of the phishing emails contained Texas addresses to deceive the customers into thinking the emails were from a legitimate business in Texas. (Dkt. 34, Exhibits B and C). Therefore, contrary to Roland's baseless argument, this suit does **not** seek extraterritorial application of TAPA.

### 5. Plaintiff's claims for tortious interference with existing contracts, tortious interference with prospective business relations, and conspiracy are properly stated.[5]

Plaintiff assists its clients (energy brokers) in procuring gas and electricity contracts with retail electric providers (REPs/suppliers) for their customers. Plaintiff provides an online tool for energy brokers to obtain and provide independent price comparisons from a variety of suppliers. (Dkt. 34 ¶ 11). BOX  has contracts with its REPs/suppliers. BOX enters into contracts with its brokers to utilize BOX's online platform for the brokers to place energy contracts for end-users with certain REPs.

---

[5] Contrary to Roland's representation in its Motion to Dismiss (Dkt. 38 p. 20), Plaintiff did not assert a claim for "Assisting and Participating" against Roland.

Defendants sent phishing emails under fake identities purporting to be the existing broker of a customer when, in fact, the customer had an existing contractual relationship with a broker working with BOX.  Defendants sought to deceive the customers as they appeared to be the entity which originally brokered the original contract using the false impression they were looking to renew the existing relationship and extend the end-users contract with a new REP. (Dkt. 34 ¶ 19). Some customers caught on to Defendants' scheme and alerted their true broker. Others inquired of their true broker who logged complaints with BOX seeking answers on how the Defendants could have obtained the information necessary for the phishing email. BOX's brokers raised concern over how BOX and the brokers' confidential information and trade secrets could have been obtained by the party (Defendants) sending the phishing email.  REPs learned of the issue and questioned BOX. All of this substantially interfered with BOX's relationships with its brokers and REPs/suppliers and caused great expense, burden and general interference with BOX's operations and contracts with brokers and REPs/suppliers. Some brokers and suppliers may eventually decide to end their relationship with Plaintiff as a result of Defendant's illegal actions. (Dkt. 34 ¶¶ 19-23, 41-63, 89-97).[6]

Roland argues that to prevail on tortious interference Plaintiff must present evidence of a breach of contract. This is certainly a misstatement of Texas law. According to Texas law, Plaintiff also can establish tortious interference with existing contracts through showing that Defendant interfered with Plaintiff's performance either by preventing the performance or by making the performance impossible or more difficult, burdensome, or expensive. *See AKB Hendrick, LP v. Musgrave Enters.*, 380 S.W.3d 221, 236 (Tex. App.—Dallas 2012, no pet.); *Seelbach v. Clubb*, 7 S.W.3d 749, 757 (Tex. App.—Texarkana 1999, pet. denied); *Tippett v.*

---

[6] There is no support for Defendant's contention that Plaintiff should disclose the names of its brokers and suppliers in a publicly available Complaint to satisfy the facial plausibility standard at the pleading stage.

*Hart*, 497 S.W.2d 606, 610 (Tex. App.—Amarillo 1973), *writ ref'd n.r.e.*, 501 S.W.2d 874 (Tex.1973); *Hughes v. Houston Nw. Med. Ctr., Inc.*, 680 S.W.2d 838, 842 (Tex. App.—Houston [1st Dist.] 1984, *writ ref'd n.r.e.*). The Complaint clearly states that Defendants' actions made Plaintiff's performance of its contracts burdensome, difficult, and more expensive. (Dkt. 34 ¶ 92). The Complaint provides more than sufficient facts about the scope and severity of the phishing emails. Plaintiff had to spent significant time and money to investigate these phishing emails to protect the security of its database (MSC) and to take appropriate actions, including filing of this suit, to prevent further unlawful misappropriation of its clients' confidential information, residing on MSC. Plaintiff's 42-page Complaint discusses the details of its investigations (Dkt. 34).

Neither proof of a breach of contract nor proof of a hindrance to Plaintiff's performance is needed for Plaintiff's claim for tortious interference with prospective business relationships.

For these reasons and as discussed in other sections, Plaintiff properly stated claims for misappropriation and tortious interference, and hence, Plaintiff's conspiracy claim is also proper. Therefore, Plaintiff requests that the Court deny Roland's Rule 12(b)(6) Motion or in the alternative allow Plaintiff's to amend its Complaint.

## V.   <u>CONCLUSION</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Court deny Defendant Rene Roland's Rule 12(b)(2) and 12(b)(6) Motion to Dismiss, or in the alternative allow Plaintiff to amend its pleading, and grant Plaintiff such other and further relief, either at law or at equity, to which it may be entitled.

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: */s/ Hamed Moradi*
Mark J. Levine, ATTORNEY-IN-CHARGE
State Bar No. 00791102
Federal ID No. 20021
Hamed Moradi
State Bar No. 24121020
Federal ID No. 3612467
24 Greenway Plaza, Suite 2050
Houston, Texas 77046
Telephone: (713) 961-9045
Facsimile: (713) 961-5341
mlevine@wkpz.com
hmoradi@wkpz.com
**ATTORNEYS FOR PLAINTIFF BROKER
ONLINE EXCHANGE, LLC**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Motion for Leave to Amend Complaint was served via ECF electronic system according to the Rules of Federal Procedure on this 21st day of August 2023 to all counsel of record.

*/s/ Hamed Moradi*
Hamed Moradi