IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BROKER ONLINE EXCHANGE, LLC. | § | |
|     *Plaintiff* | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-02674 |
| | § | |
| KONECT MANAGEMENT, LLC, d/b/a | § | |
| KONECT ENERGY; MICHAEL RIZK f/k/a | § | |
| MICHAEL GERGUIS, and also using the aliases | § | |
| and business names, CHRISTOPHER HILL, | § | |
| CHUCK DEAN, SAM OLSEN, ALEX MILLER, | § | |
| ADAM REED, MICHAEL WALSH, JUSTIN | § | |
| WILLIAMS, RUDY KELLER, JOEY PANZINI, | § | |
| BETTER CLEAN ENERGY MANAGEMENT, | § | |
| BLUE CHIP ENERGY, ENERGY RENEWALS, | § | |
| ENERGY EXTENSIONS, CONTRACT | § | |
| RENEWALS, APPROVE ENERGY, THE | § | |
| ENERGY BROKERAGE, ENERGY ONE | § | |
| SOLUTIONS, GET ENERGY SOLUTIONS, TX | § | |
| RENEWALS, THE ENERGY SUPPLY, POWER | § | |
| GRID, POWER RENEWALS, ELECTRICITY | § | |
| RENEWAL AGREEMENT, and ELECTRICITY | § | |
| RENEWAL; | § | |
| ENERGY BROKER ONLINE LLC; RENE | § | |
| ROLAND; NIKLAUS SCHWENKER | § | |
| | § | |
|     *Defendants.* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS KONECT ENERGY'S AND MICHAEL RIZK'S AMENDED RULE 12(b)(6) MOTION TO DISMISS

Plaintiff Broker Online Exchange, LLC ("Plaintiff" or "BOX") files this Response to Defendants Konect Energy's ("Konect") and Michael Rizk's ("Rizk") Amended Rule 12(b)(6) Motion to Dismiss.

# Table of Contents

I.    STATEMENT OF THE ISSUES ..................................................................................... 1

II.   SUMMARY OF ARGUMENTS ..................................................................................... 2

III.  THE NATURE AND STAGE OF THE PROCEEDINGS ............................................. 2

IV.   ARGUMENT AND AUTHORITIES .............................................................................. 4

      A.   Pleading Standard ................................................................................................. 4

      B.   The Complaint is not subject to dismissal for impermissible "shotgun pleading" .............. 5

      C.   Plaintiff sufficiently alleged its DTSA claim. ....................................................... 7

      D.   Plaintiff has standing to sue under the DTSA, and the subject trade secrets are legally protectable ............................................................................................................. 9

      E.   Plaintiff properly states a claim against Konect and Rizk for violation of TAPA ........... 10

      F.   Plaintiff's claims for tortious interference with existing contracts, tortious interference with prospective business relations, and conspiracy are properly stated ................... 12

V.    CONCLUSION .............................................................................................................. 14

# Table of Authorities

Cases                                                                                                                         Page(s)

*AKB Hendrick, LP v. Musgrave Enters.*,
   380 S.W.3d 221 (Tex. App.—Dallas 2012, no pet.) .................................................................. 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................... 4

*ATC Media, LLC v. Michaels Stores, Inc.*,
   2023 WL 5058837 (N.D. Tex. Aug. 7, 2023) ............................................................................. 6

*Bates v. Laminack*,
   938 F. Supp. 2d 649 (S.D. Tex. 2013) ........................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................................... 4

*Bhatia v. Dischino*,
   2011 WL 3820825, 2011 U.S. Dist. LEXIS 97339, *12 (N.D. Tex. Aug. 29, 2011) ............... 5

*Bureau Veritas Commodities and Trade Inc. v. Cotecna Inspection SA*,
   2022 WL 912781 (S.D. Tex. March 29, 2022) .......................................................................... 8

*Clapper v. Am. Realty Invs., Inc.*,
   2015 WL 3504856 (N.D. Tex. 2015) .......................................................................................... 5

*Cloud v. United States*,
   536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002) ............................................................ 4

*Cotiviti, Inc. v. HMS Holdings Corp.*,
   2020 WL 13430177 (N.D. Tex. Sep. 8, 2020) .......................................................................... 9

*DBG Group Investments, LLC v. Puradigm, LLC*,
   2022 WL 313435 (N.D. Tex. Feb. 2, 2022) ............................................................................... 9

*DTM Research, LLC v. AT&T Corp.*,
   245 F.3d 327 (4th Cir. 2001) ...................................................................................................... 9

*GlobeRanger Corp. v. Software AG United States of Am., Inc.*,
   836 F.3d 477 (5th Cir. 2016) ...................................................................................................... 8

*Hughes v. Houston Nw. Med. Ctr., Inc.*,
   680 S.W.2d 838 (Tex. App.—Houston [1st Dist.] 1984, *writ ref'd n.r.e.* ................................ 13

*Humana, Inc. v. Shrader & Assocs., LLP*,
   584 B.R. 658 (S.D. Tex. 2018) ................................................................................................... 5

*In re Cayman Island Firm of Deloitte & Touche*,
   2001 WL 1042233 (Tex. App.—San Antonio Sept. 12, 2001, no pet.) .................................... 9

*NTGSH JV, LLC v. Williams*,
   2021 WL 4440325 (S.D. Tex. Sept. 22, 2021) ................................................................. 9

*Penthol LLC v. Vertex Energy Operating, LLC*,
   2021 WL 3571243 (S.D. Tex. Aug. 12, 2021) ................................................................. 8

*Reed Migraine Ctrs. of Tex., PLLC v. Chapman*,
   2015 WL 11120872 (N.D. Tex. 2015) ......................................................................... 5, 6

*Seelbach v. Clubb*,
   7 S.W.3d 749 (Tex. App.—Texarkana 1999, pet. denied) ............................................ 13

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
   509 F.3d 673 (5th Cir. 2007) ........................................................................................... 4

*Tippett v. Hart*,
   497 S.W.2d 606 (Tex. App.—Amarillo 1973) .............................................................. 13

*Well Cell Global LLC v. Calvit*,
   2022 WL 16857060 (S.D. Tex. Nov. 10, 2022) ............................................................ 10

*Wellogix, Inc. v. Accenture, L.L.P.*,
   716 F.3d 867 (5th Cir. 2013) ........................................................................................... 8

*Williams Consol. I, Ltd. v. Smith*,
   2009 WL 10698215 (S.D. Tex. Oct. 19, 2009) ............................................................... 9

## Rules

Federal Rule of Civil Procedure 8(a) ......................................................................................... 5

## I.   STATEMENT OF THE ISSUES

**Issue No. 1.** Whether Plaintiff's First Amended Complaint ("Complaint") is an objectionable "shotgun pleading" when it (a) provides detailed facts set forth in individually numbered paragraphs that explain that Defendants were related to a specific illegal scheme; (b) explains that the subject misconduct is attributable to Defendants' collective operation of the scheme; (c) provides that Rizk is using Konect (and its affiliate Energy Broker Online LLC ("Energy Broker Online")[1] as a sham to perpetrate fraud; (d) alleges that there is an alter ego relationship between Rizk and Konect/Energy Broker Online; (e) presents facts and evidence establishing that to a great extent, the subject misconduct was committed under fake names; and (f) the alleged missing details can easily be discovered through Konect's and Rizk's themselves?[2]

**Issue No. 2.** Whether Plaintiff sufficiently states a claim against Konect and Rizk under the federal Defend Trade Secrets Act ("DTSA") when the Complaint establishes ownership of a protectable trade secret by showing (a) Plaintiff is the owner of an online, cloud-based software internally developed by Plaintiff which is in and of itself a trade secret; (b) Plaintiff's clients' confidential information, including customer list, pricing, contracts, etc., resides on and is processed by Plaintiff's software; (c) Plaintiff has possession and knowledge of this confidential information through its close affiliation with the clients?

**Issue No. 3.** Whether Plaintiff sufficiently states a claim under Texas Anti-Phishing Act ("TAPA") against Konect and Rizk when the Complaint establishes that Texas residents received

---

[1] Defendant Energy Broker Online's answer was due on August 17th, but no responsive pleading has been filed.
[2] There are only 5 Defendants in this case, and not 30 as misstated by Roland in its Motion (Dkt. 37 p. 1).

phishing emails and links to fake websites from Rizk and Konect and their operation of Energy Broker Online in Texas?

**Issue No. 4.** Whether Plaintiff sufficiently states claims for tortious interference with the existing contracts and prospective business relations when the Complaint establishes that Defendants' phishing emails obstructed and caused damage to Plaintiff's contractual rights and obligations to its clients and suppliers?

**Issue No. 5.** Whether Plaintiff sufficiently states a claim for conspiracy against Konect and Rizk when the Complaint establishes the underlying misappropriation and tortious interference?[3]

## II.   SUMMARY OF ARGUMENTS

Konect's and Rizk's Rule 12(b)(6) Motion should be denied because (1) the Complaint satisfies the pleading requirements, and cannot be considered an objectionable "shotgun pleading"; (2) BOX sufficiently states a claim under the DTSA and established its ownership of a protectable trade secrets; (3) Plaintiff sufficiently states a claim under TAPA by showing that Texas residents systematically received phishing emails and links to fake websites, traceable to Rizk's and Konect's operation of a deceptive scheme; (4) Plaintiff pled sufficient facts to make it facially plausible that the phishing emails tortiously interfered with Plaintiff's existing contracts and prospective business relations; and (5) Plaintiff's sufficiently states a claim for conspiracy by establishing Konect's and Rizk's responsibility for the underlying DTSA and tortious interference claims.

## III.   THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff sued Defendants Konect Management, LLC and Michael Rizk for violation of the Defend Secrets Act on August 9, 2022. (Dkt. 1). Several months later, Plaintiff discovered

---

[3] Plaintiff did not assert an assisting and participating claim against Konect and Rizk.

that Roland was the President and managing member of Konect. Plaintiff also discovered that Rizk, Roland, and Konect continued their unlawful activities after the initiation of this lawsuit in a conspiracy with Niklaus Schwenker and Energy Broker Online. Upon discovery of these facts, Plaintiff amended its complaint, adding Roland, Schewenker, and Energy Broker Online to the suit.

Energy Broker Online was originally named "Your Wyoming Office", formed on November 6, 2017. On October 13, 2022, only two months after the initiation of this lawsuit, the company submitted its request for changing its name to Energy Broker Online, which was approved by the Wyoming Secretary of State on November 4, 2022. Later, on January 2, 2023, Energy Broker Online filed its application for registration as a foreign limited liability company with the Texas Secretary of State. (Dkt. 34 ¶ 18). Defendants are using the name "Energy Broker Online" to intentionally confuse and deceive Plaintiff Broker Online Exchange's customers and suppliers. (Dkt. 34 p. 2). It appears that Energy Broker Online is simply the continuation of Konect's business. After registration of Energy Broker Online in Texas, Konect forfeited its corporate charter (for tax delinquency) in its State of formation (Wyoming).



https://wyobiz.wyo.gov/Business/FilingDetails.aspx?eFNum=125209238058234022106123197069244173166001107244 (last visited Aug. 19, 2023).

The fact that Konect was just a sham entity is further supported by the Texas Secretary of State, which indicates that Konect is just a "fictious" name.



To this date, Konect, Rizk and Plaintiff have only exchanged written discovery requests, but no documents have actually been produced.

## IV. ARGUMENT AND AUTHORITIES

### A. Pleading Standard.

A plaintiff should plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). To rule on a Rule 12(b)(6) motion, the court should accept all well-pleaded facts in the plaintiff's complaint as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Cloud v. United States*, 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002).

4

B. **The Complaint is not subject to dismissal for impermissible "shotgun pleading".**

The general rules of pleading do not require specificity or particularity in a claim for relief that can be discovered. *Humana, Inc. v. Shrader & Assocs., LLP*, 584 B.R. 658, 672 (S.D. Tex. 2018). In *Humana*, several non-governmental insurers, sponsors, and administrators of ERISA filed a complaint against a law firm, requesting reimbursement of clients' asbestos-related medical costs out of settlement funds. The law firm moved to dismiss for impermissible "shotgun pleading", arguing that the complaint failed to specify which particular insurers alleged which particular types of claims based on which particular insureds. The court denied the motion to dismiss, holding that the complaint satisfied Rules 8(a) and 10(b) and that the alleged missing details could be discovered. *Id.* at 670-72.

"What makes a pleading a 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." *Bates v. Laminack*, 938 F. Supp. 2d 649, 667 (S.D. Tex. 2013) (holding that the complaints met the requirements of Rules 8(a) and 9(b)). "Multiple defendants' conduct may be lumped together if the plaintiff's allegations elsewhere designate the nature of the defendants' relationship to a particular scheme and identify the defendants' role ...." *Id.* at 668 (quoting *Bhatia v. Dischino*, No. 3:09–CV–1086–B, 2011 WL 3820825, at *3–4, 2011 U.S. Dist. LEXIS 97339, *12 (N.D. Tex. Aug. 29, 2011).

"[P]laintiffs are permitted under federal procedure to allege that more than one defendant (i.e., a group of named defendants) committed the same alleged act." *Reed Migraine Ctrs. of Tex., PLLC v. Chapman*, 2015 WL 11120872, at *4 (N.D. Tex. 2015) (citing *Clapper v. Am. Realty Invs., Inc.*, 2015 WL 3504856, at *4 (N.D. Tex. 2015)). Federal Rule of Civil Procedure 8(a) does not require plaintiffs, " 'without the benefit of discovery, to connect every single

alleged instance of misconduct in the complaint to every single specific [defendant].' " *Reed Migraine Ctrs. of Tex.*, PLLC, 2015 WL 11120872, at *4 (internal citation omitted); *see also ATC Media, LLC v. Michaels Stores, Inc.*, 2023 WL 5058837, at * 2 (N.D. Tex. Aug. 7, 2023) (denying the motion to dismiss, reasoning that the complaint properly put the defendants on notice that the plaintiff attributes the alleged misconduct to the defendants' joint operation as entities that operate collectively).

Plaintiff's Complaint provides 20 pages of detailed facts and evidence about Konect's business scheme, its relationship with Roland, Rizk, Niklaus Schwenker, and Energy Broker Online. (Dkt. 34 at pp. 6-27). BOX further asserted that Rizk, Roland, and Niklaus Schwenker use Energy Broker Online and Konect as shams to perpetrate fraud and these alleged entities are mere tools or business conduits. (Dkt. 34 at 32-33).

Plaintiff then asserted claims for violations of Defend Trade Secrets Act, tortious interference with existing contracts, and tortious interference with prospective business relations against <u>all</u> Defendants in this case. (Dkt. 27-31). Plaintiff further alleged that Konect, Rizk, Energy Broker Online, Rene Roland, and Niklaus Schwenker are all co-conspirators. (Dkt. 34 at p. 31). Finally, Plaintiff claimed assisting and participating <u>only</u> against Defendants Energy Broker Online and Niklaus Schwenker. (Dkt. 34 at pp. 31-32).

Plaintiff's Complaint is sufficiently clear and plausible. Additionally, the information and details Konect and Rizk wished to see in Plaintiff's Complaint can all be discovered through Konect and Rizk's own records, which they failed to produce. On July 27, 2023, **four days** before filing of their Motion to Dismiss, Konect and Rizk responded to Plaintiff's Requests for Production merely by stating:

6

> **RESPONSE:** Responsive documents, to the extent they exist, will be produced.

As indicated in Plaintiff's Complaint, this case is unique in that Defendants brazenly use fake aliases and made-up identities to send phishing emails. BOX pled a plethora of facts that demonstrate Defendants are responsible for the illegal conduct. Therefore, Plaintiff requests that the Court deny Konect's and Rizk's Amended Rule 12(b)(6) Motion or in the alternative allow Plaintiff to amend its Complaint.

### C. Plaintiff sufficiently alleged its DTSA claim.

Plaintiff's Complaint satisfies the facial plausibility standard of *Twombly* and *Iqbal*. Plaintiff sufficiently pled facts to show that it owns trade secrets. Plaintiff provides an online tool for energy brokers to obtain and provide independent price comparisons from a variety of suppliers. (Dkt. 34 ¶ 11). Plaintiff assists its clients (energy brokers) in procuring gas and electricity contracts with retail electric providers ("REPs") for their clients. (Dkt. 34 ¶ 11). Plaintiff's clients register information with Plaintiff related to their respective customers, including but not limited to, customers' contact information, customers' current and previous electricity suppliers, and details and terms of customers' current and previous electricity contracts. The stored information is not readily available to the public and belongs to both Plaintiff and its clients. (Dkt. 34 ¶ 12). Such information is stored in Plaintiff's My Service Cloud ("MSC"). MSC is an online, cloud-based software internally developed by Plaintiff to help its brokers manage their businesses. (Dkt. 34 ¶ 71). MSC's method of collection, organization, searchability, and retention of data is in and of itself Plaintiff's trade secrets. (Dkt. 34 ¶ 72).

Defendants' disagreement about what constitutes Plaintiff's trade secrets only creates a fact question for the factfinder to ultimately decide. *See GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 492 (5th Cir. 2016) ("Whether a trade secret exists is a question of fact.") (citing *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013)).

The aforementioned allegations also sufficiently identify the subject trade secrets. In *Bureau Veritas Commodities and Trade Inc. v. Cotecna Inspection SA, 2022 WL 912781*, *6-7 (S.D. Tex. March 29, 2022), this Court denied the defendant's Motion to Dismiss, holding that Plaintiff has satisfied its burden at the pleading stage. In support of its DTSA claims, the plaintiff asserted the following as trade secrets: "its profit and loss information, financial information, business plans, strategic growth strategies, sales information, operational weaknesses, marketing strategies, customer information, pricing, pricing strategies, sales volume, operational plans, employee compensation, vendor and contractor information, testing procedures, certificates, and laboratory technology." The defendant moved for dismissal arguing that the alleged trade secrets were vague and overbroad. Denying the motion, this Court reasoned that the plaintiff did not need to disclose detailed descriptions of its trade secrets in the pleading. Similarly, in *Penthol LLC v. Vertex Energy Operating, LLC*, 2021 WL 3571243, at *5 (S.D. Tex. Aug. 12, 2021), this Court denied the motion to dismiss, where Plaintiff described its customer lists, purchase contracts, and business plans as its trade secrets. This Court reasoned that "these types of confidential items are sufficient to defeat a motion to dismiss." *Id.*

Plaintiff sufficiently pled facts to make the misappropriation claim facially plausible. Plaintiff alleged that Konect attempted to log into MSC. (Dkt. 34 ¶ 24). Konect took detailed confidential data and documents of the accounts registered with Plaintiff, created numerous fake identities, and used the data and documents to deceive various individuals and entities. (Dkt. 34

¶¶ 19-23, 41-63). Plaintiff then alleged detailed facts establishing that all the fake identities were related to Konect's business operation. (Dkt. 34 ¶ 24-35) *See Cotiviti, Inc. v. HMS Holdings Corp.*, 2020 WL 13430177, at *6 (N.D. Tex. Sep. 8, 2020) (finding that the plaintiff sufficiently alleged misappropriation of trade secrets where plaintiff provided examples of the trade secrets and described the defendant's motivation for the alleged misappropriation); *DBG Group Investments, LLC v. Puradigm, LLC*, 2022 WL 313435, *3 (N.D. Tex. Feb. 2, 2022) (finding sufficient allegations of misappropriation where the plaintiff alleged that former employees had its proprietary formula prior to joining the defendant's company and that they incorporate the formula into the defendant's product.).

Therefore, Plaintiff requests that the Court deny Konect's and Rizk's Amended Rule 12(b)(6) Motion or in the alternative allow Plaintiff's to amend its Complaint.

### D. Plaintiff has standing to sue under the DTSA, and the subject trade secrets are legally protectable.

"[O]ne 'owns' a trade secret when one knows of it, as long as it remains a secret." *In re Cayman Island Firm of Deloitte & Touche*, No. 04-01-00491-CV, 2001 WL 1042233, at *3 (Tex. App.—San Antonio Sept. 12, 2001, no pet.) (quoting *DTM Research, LLC v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001); *Williams Consol. I, Ltd. v. Smith*, No. 8-cv-766, 2009 WL 10698215, at *6 (S.D. Tex. Oct. 19, 2009) (same), *report and recommendation adopted*, No. 4:08-CV-766, 2009 WL 10698262 (S.D. Tex. Nov. 19, 2009); *Fast Capital Marketing, L.L.C. v. Fast Capital, L.L.C.*, No. H–08–2142, 2008 WL 5381309, at *12 (S.D. Tex. Dec. 24, 2008); *NTGSH JV, LLC v. Williams*, No. 20-cv-2469, 2021 WL 4440325, at *2 (S.D. Tex. Sept. 22, 2021).

In *Williams Consol. I, Ltd. v. Smith*, the defendants argued that the plaintiff sustained no injury because the plaintiff was not the owner of the trade secret information. The court held that

9

the plaintiff had standing because it only knew of the information through its confidential relationship with the legal owner. No. 8-cv-766, 2009 WL 10698215, at *6; *see also Well Cell Global LLC v. Calvit*, 2022 WL 16857060, at *6 (S.D. Tex. Nov. 10, 2022).

Similarly, in this case, Plaintiff and its clients are both owners of the trade secret information, i.e., the clients' respective customers' contact information, customers' current and previous electricity suppliers, and details and terms of customers' current and previous electricity contracts. (Dkt. 34 ¶ 12). Additionally, Plaintiff is the owner of the database (MSC) on which the aforementioned trade secrets reside. MSC's method of collection, organization, searchability, and retention of data is in and of itself Plaintiff's trade secrets. (Dkt. 34 ¶ 72). Therefore, regardless of the legal ownership of the data entered into MSC by each client, Plaintiff is the owner of the final format of such data after it has been collected, processed, and organized by MSC. The data in its final format has an independent economic value.

As discussed in the previous section, the types of information and documents involved in this case are protectable trade secrets. Rizk and Konect's disagreement only creates a factual question and cannot be a basis for dismissal at the pleading stage. Therefore, Plaintiff requests that the Court deny Defendants' Rule 12(b)(6) Motion or in the alternative allow Plaintiff's to amend its Complaint.

### E. Plaintiff properly states a claim against Konect and Rizk for violation of TAPA.[4]

Plaintiff pled more than sufficient facts to satisfy the facial plausibility standard for its TAPA claim. The Complaint provides detailed facts establishing that Rizk and Konect were behind the phishing emails by tracing the IP address of Konect. (Dkt. 34 ¶¶ 24-35, 51, 19-23). BOX also provided samples of those phishing emails as Exhibits. (Dkt. 34, Exhibits A, B, C).

---

[4] Under this Section, Plaintiff addresses arguments in Sections C.1 and C.2 of Defendants' Motion to Dismiss (Dkt. 37).

Plaintiff then alleged facts and provided evidence showing that Konect and Rizk took content from other websites and used it to create an Internet foothold for its fake businesses and to manufacture fake identities. (Dkt. 34 pp. 11-22). Plaintiff is not required to disclose the identity of its broker-customers who received the phishing emails in a publicly available Complaint. Plaintiff provided more than sufficient facts showing that Defendants were collectively operating a deceptive business. The additional details Rizk and Konect wished to see can easily be discovered, from the records in their own possession, custody, and control.

With regard to damages, the Complaint states that "[a]s a result of Defendants' violation of the Texas Anti-Phishing Act, Plaintiff has suffered, and will continue to suffer, loss to its <u>reputation and good will</u>. Plaintiff has also sustained <u>loss profits</u> as a result of brokers' unwillingness to work with Plaintiff due to the phishing emails." (Dkt. 34 ¶ 87). Plaintiff alleged sufficient facts to make its claimed damages facially plausible. Plaintiff provides an online tool (MSC) for energy brokers to obtain and provide independent price comparisons from a variety of suppliers. (Dkt. 34 ¶ 11). BOX assists its clients (energy brokers) in procuring gas and electricity contracts with retail electric providers ("REPs") for their clients. (Dkt. 34 ¶ 11). Receipt of numerous phishing emails containing detailed confidential information will raise questions about the reliability and security of MSC and Plaintiff's business, harming Plaintiff's reputation in the industry and causing loss profits. Contrary to Defendants' argument, Plaintiff is not required to disclose details of its damages and identity of its former brokers in a publicly available Complaint.

It appears that Defendants are trying to use Rule 12(b)(6) as a tool to obtain free discovery in this case. This is certainly beyond the scope of the Rule. Plaintiff clearly alleged sufficient facts and provided evidence showing that the application of TAPA is proper in this

case. Konect is registered with the Texas Secretary of State and does business in the State of Texas. The phishing emails were sent to Plaintiff's broker-customers in Texas: Houston, Tyler, Graham, League City, Dallas, Denison, Hutto, Odessa, Pantego, San Angelo, Hidalgo, and Katy. (Dkt. 34 ¶¶ 41, 44, 49, 52, 54, 55, 56, 60, and 61). Some of the phishing emails contained Texas addresses to deceive the customers into thinking the emails were from a legitimate business in Texas. (Dkt. 34, Exhibits B and C). Therefore, contrary to Defendants' baseless argument, this suit does **not** seek extraterritorial application of TAPA.

 F. **Plaintiff's claims for tortious interference with existing contracts, tortious interference with prospective business relations, and conspiracy are properly stated.[5]**

Plaintiff assists its clients (energy brokers) in procuring gas and electricity contracts with retail electric providers (REPs/suppliers) for their customers. Plaintiff provides an online tool for energy brokers to obtain and provide independent price comparisons from a variety of suppliers. (Dkt. 34 ¶ 11). BOX has contracts with its REPs/suppliers. BOX enters into contracts with its brokers to utilize BOX's online platform for the brokers to place energy contracts for end-users with certain REPs.

Defendants sent phishing emails under fake identities purporting to be the existing broker of a customer when, in fact, the customer had an existing contractual relationship with a broker working with BOX. Defendants sought to deceive the customers as they appeared to be the entity which originally brokered the original contract using the false impression they were looking to renew the existing relationship and extend the end-users contract with a new REP. (Dkt. 34 ¶ 19). Some customers caught on to Defendants' scheme and alerted their true broker. Others inquired of their true broker who logged complaints with BOX seeking answers on how

---

[5] Under this Section, Plaintiff addresses arguments in Sections D.1 and D.2 of Defendants' Motion to Dismiss (Dkt. 37). Plaintiff did not assert a claim for "Assisting and Participating" against Konect and Rizk.

Defendants could have obtained the information necessary for the phishing email. BOX's brokers raised concern over how BOX and the brokers' confidential information and trade secrets could have been obtained by the party (Defendants) sending the phishing email. REPs learned of the issue and questioned BOX too. All of this substantially interfered with BOX's relationships with its brokers and REPs/suppliers and caused great expense, burden and general interference with BOX's operations and contracts with brokers and REPs/suppliers. Some brokers and suppliers may eventually decide to end their relationship with Plaintiff as a result of Defendants' illegal actions. (Dkt. 34 ¶¶ 19-23, 41-63, 89-97).[6]

      Konect and Rizk argue that to prevail on tortious interference Plaintiff must present evidence of a breach of contract. This is certainly a misstatement of Texas law. According to Texas law, Plaintiff also can establish tortious interference with existing contracts through showing that Defendant interfered with Plaintiff's performance either by preventing the performance or by making the performance impossible or more difficult, burdensome, or expensive. *See AKB Hendrick, LP v. Musgrave Enters.*, 380 S.W.3d 221, 236 (Tex. App.—Dallas 2012, no pet.); *Seelbach v. Clubb*, 7 S.W.3d 749, 757 (Tex. App.—Texarkana 1999, pet. denied); *Tippett v. Hart*, 497 S.W.2d 606, 610 (Tex. App.—Amarillo 1973), *writ ref'd n.r.e.*, 501 S.W.2d 874 (Tex.1973); *Hughes v. Houston Nw. Med. Ctr., Inc.*, 680 S.W.2d 838, 842 (Tex. App.—Houston [1st Dist.] 1984, *writ ref'd n.r.e.*). The Complaint clearly states that Defendants' actions made Plaintiff's performance of its contracts burdensome, difficult, and more expensive. (Dkt. 34 ¶ 92). The Complaint provides more than sufficient facts about the scope and severity of the phishing emails. Plaintiff had to spend significant time and money to investigate these phishing emails to protect the security of its database (MSC) and to take appropriate actions,

---

[6] There is no support for Defendants' contention that Plaintiff should disclose the names of its brokers and suppliers in a publicly available Complaint to satisfy the facial plausibility standard at the pleading stage.

13

including filing of this suit, to prevent further unlawful misappropriation of its clients' confidential information, residing on MSC. Plaintiff's 42-page Complaint discusses the details of its investigations (Dkt. 34).

Neither proof of a breach of contract nor proof of a hindrance to Plaintiff's performance is needed for Plaintiff's claim for tortious interference with prospective business relations.

For these reasons and as discussed in other sections, Plaintiff properly stated claims for misappropriation and tortious interference, and hence, Plaintiff's conspiracy claim is proper. Therefore, Plaintiff requests that the Court deny Konect's and Rizk's Rule 12(b)(6) Motion or in the alternative allow Plaintiff to amend its Complaint.

## V.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that the Court deny Plaintiff's Defendant Konect's and Rizk's Amended Rule 12(b)(6) Motion to Dismiss, or in the alternative allow Plaintiff to amend its pleading, and grant Plaintiff such other and further relief, either at law or at equity, to which it may be entitled.

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: */s/ Hamed Moradi*
Mark J. Levine, ATTORNEY-IN-CHARGE
State Bar No. 00791102
Federal ID No. 20021
Hamed Moradi
State Bar No. 24121020
Federal ID No. 3612467
24 Greenway Plaza, Suite 2050
Houston, Texas 77046
Telephone: (713) 961-9045
Facsimile: (713) 961-5341
mlevine@wkpz.com

hmoradi@wkpz.com
**ATTORNEYS FOR PLAINTIFF BROKER ONLINE EXCHANGE, LLC**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Motion for Leave to Amend Complaint was served via ECF electronic system according to the Rules of Federal Procedure on this 21st day of August 2023 to all counsel of record.

*/s/ Hamed Moradi*
Hamed Moradi
