United States District Court
Southern District of Texas
**ENTERED**
March 05, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BROKER ONLINE EXCHANCE, LLC | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-2674 |
| | § | |
| | § | |
| KONECT MANAGEMENT, LLC, d/b/a | § | |
| KONECT ENERGY, et al. | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the Court is Defendants Konect Energy ("Konect") and Michael Rizk's ("Rizk") joint Motion to Dismiss (Doc. No. 37) and Defendant Rene Roland's ("Roland") Motion to Dismiss. (Doc. No. 38). Plaintiff Broker Online Exchange, LLC ("Plaintiff" or "BOX") filed a response to Konect and Rizk's motion (Doc. No. 41) and filed a response to Roland's motion. (Doc. No. 40). Konect, Rizk, and Roland (collectively, "Defendants") filed a joint reply thereto (Doc. No. 42). Having considered the motions, pleadings, and applicable law, the Court hereby GRANTS Defendant Roland's motion to dismiss for lack of personal jurisdiction (Doc. No. 38) and DENIES Defendants Konect and Rizk's motion to dismiss for failure to state a claim. (Doc. No. 37).

### I.   Background

This case involves the alleged misappropriation of Plaintiff BOX's trade secrets.[1] The relevant players are described as follows. Plaintiff BOX is an online tool for energy brokers to

---

[1] These facts are taken from Plaintiff's First Amended Complaint. (Doc. No. 34).

obtain and provide independent price comparisons from a variety of suppliers. BOX assists its clients (energy brokers) in procuring gas and electricity contracts with retail electric providers ("REPs") for their clients. To become a BOX client, an energy broker registers information with BOX related to *their* respective customers, including but not limited to, customers' contact information, customers' current and previous electricity suppliers, and details and terms of customers' current and previous electricity contracts. BOX assures each broker-client that this information about its customers remains confidential to BOX and the broker.

Konect is an energy broker, and Rizk is Konect's current president. (*Id.* at 5). BOX alleges that in January 2017, Rizk introduced himself to BOX as the president of CES Solutions based in Montreal, Canada, claiming to have a book of business in the United States that needed to be placed under energy contracts with BOX. Rizk electronically executed BOX's standard form for broker terms and services via an online enrollment portal. Rizk never closed any deals as CES Solutions, and, shortly after, his email address and phone number were no longer in service.

In May of 2020, Rizk sent BOX an email requesting to register with BOX under a different name, BCE Management, and new email address, michael.rizk@bcemanagement.com. BOX questioned Rizk about his previous registration under CES Solutions. Rizk claimed to have forgotten the prior relationship. Shortly after, Rizk requested that BOX change his email address information to michael.rizk@konectmanagement.com. After the commencement of the lawsuit and the filing of the original complaint, BOX discovered that Defendant Rene Roland was allegedly also acting as the president of Konect.

Also after the initial filing of this lawsuit, BOX discovered that Defendant Energy Broker Online LLC ("EBO") was connected to Konect as well. EBO is a company owned by Defendant Niklaus Schwenker ("Schwenker"). Energy Broker Online LLC was originally named "Your

Wyoming Office LLC", formed on November 6, 2017. On October 13, 2022, only two months after initiation of this lawsuit, the company submitted its request for changing its name to Energy Broker Online LLC, which was approved by the Wyoming Secretary of State on November 4, 2022. Later, on January 2, 2023, Energy Broker Online LLC filed its application for registration as a foreign limited liability company with the Texas Secretary of State. BOX contends that EBO is simply a continuation of Konect and Rizk's business.

With these parties and this background in mind, the Court now turns to BOX's factual allegations against Defendants. BOX alleges that, beginning at least as early as March of 2022, Rizk/Konect began sending phishing emails to business owners who are not Rizk/Konect's customer but instead customers of other brokers with accounts registered with BOX. Rizk/Konect's emails allegedly have similar traits. To avoid detection, Rizk/Konect and the other Defendants created fake identities and fake business names. The contents of the emails are similar. First, in each email, Defendants represent that the potential customer is under a contract coming up for renewal, oftentimes deceiving the potential customers as they appeared to be the entity which originally brokered the original contract and had come back to book the potential renewal of that contract. This is sometimes true and other times false, depending on whether a renewal contract had already been facilitated by BOX and/or its partners.

Second, many of the emails were sent via DocuSign for the consumer to execute a contract with Defendants by providing an electronic signature, not knowing the true identity of the broker. The contracts sent via DocuSign contained BOX's broker-customers' names, phone numbers, email addresses, physical addresses, account numbers, and the effective dates of these contracts would be the day after the expiration of BOX's broker-customers' current electricity contracts.

BOX alleges that the Defendants could not have the information to send these phishing emails but for an illegal breach of BOX's security and misappropriation of BOX's trade secrets. As of the date of the filing of this Amended Complaint, at least fifty BOX broker-customers have notified BOX that they received phishing emails. Collectively, BOX broker-customers have received over a hundred phishing emails. Most of the emails were sent via DocuSign with Defendants representing themselves as the broker of those accounts or as the representative of the REPs. The latest phishing email was sent to a BOX broker-customer on April 14, 2023. BOX complains that there is no sign that the phishing emails will stop.

Without getting too far into the details, BOX believes that Konect is behind these phishing emails after it conducted an investigation. BOX found that the IP address from Konect's log in attempt to BOX's My Service Cloud ("MSC") was the same as the IP address retained in the DocuSign contracts' metadata contained in the phishing emails. Moreover, the similarities in the phishing emails suggests that they were all sent by the same entity or group. BOX then alleges that in order to make its fake businesses appear legitimate, Konect copies and pastes text from its other websites.

BOX believes that EBO is a continuation of Konect's phishing scheme because after this lawsuit was filed, on March 3, 2023, EBO president and co-defendant Schwenker left a voice message for one of BOX's suppliers. While the voicemail was from Schwenker, the caller ID displayed "RIZK,MICHAEL," thus suggesting that Schwenker and EBO were involved in the same scheme as Rizk and Konect. Again, on April 18, 2023, a supplier notified BOX that Konect was now operating as Energy Broker Online LLC.

Given these alleged facts, BOX filed its First Amended Complaint (Doc. No. 34) ("the Complaint") against Defendants Konect, Rizk, EBO, Schwenker, and Roland alleging the

4

following. First, BOX alleges that the Defendants violated the Defend Trade Secrets Act ("DTSA") by misappropriating Box's customer-related trade secrets secured in the MSC. Second, BOX contends that the Defendants violated the Texas Anti-Phishing Act by sending phishing emails to Texas residents that falsely claim to be legitimate online businesses. Third, BOX alleges that the Defendants are liable for tortious interference with existing contracts and prospective business relations because the persistent phishing emails have hurt BOX's relationship with its customers and business operations. Fourth and finally, BOX contends that the Defendants, collectively, are liable for conspiracy to commit these acts and that EBO and Schwenker, specifically, are liable for assisting and participating.

## II. Legal Standard

### a. *Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction*

When a district court rules on a Rule 12(b)(2) motion without a hearing, the plaintiff must make a prima facie showing of jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The court may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Generally, the court accepts the plaintiff's non-conclusory, uncontroverted allegations as true and resolves conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with Fourteenth Amendment to the United States Constitution. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398

(5th Cir. 2009). The two-part jurisdictional inquiry collapses into a single step in this forum because the Texas long-arm statute extends to the limits of federal due process. Tex. Civ. Prac. & Rem. Code § 17.042; *Johnston*, 523 F.3d at 609; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398.

"Minimum contacts" can give rise to either specific personal jurisdiction or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General personal jurisdiction exists when a non-resident defendant's contacts with the forum state are "substantial, continuous, and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–19, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir.2003). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir.2007) (citation omitted). Generally, "an individual is subject to general jurisdiction in [his] place of domicile." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

The court "may exercise 'specific' jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair

and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The touchstone of the minimum contacts inquiry is whether the defendant's conduct shows that it "reasonably anticipates being haled into court" in the forum state. *Id.*

### b. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim for Relief

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Similarly, a plaintiff may file a Rule 12(b)(6) motion to dismiss a counterclaim. *See Kansas v. Nebraska*, 527 U.S. 1020 (1999). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

7

### III. Analysis on Roland's 12(b)(2) Motion to Dismiss

The Court will first address the issue of whether it has personal jurisdiction over Defendant Roland. Roland raised this argument in his motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

The Complaint alleges few facts with regard to Roland, specifically, and states only that Roland may be served in New York. In his motion to dismiss, Roland contends, first, that BOX has not alleged any facts establishing that he has continuous and systematic contact with Texas such that general jurisdiction attaches, and second, that BOX has not alleged acts of wrongdoing by Roland that occurred in Texas or any allegations that he has purposefully availed himself of Texas such that specific jurisdiction attaches.

Roland notes that the Complaint does not allege that he committed any tortious acts in Texas. The Complaint alleges, generally, that all of the Defendants either illegally breached BOX's security and/or unlawfully accessed the BOX's My Service Cloud ("MSC"). (Doc. No. 34 at 6). Specifically, however, the Complaint alleges that it was Konect—not Roland—who attempted to login to the MSC. (*Id.*). The Complaint does not allege that the MSC was maintained in Texas or that Roland accessed or attempted to access the MSC or breached BOX's security from Texas. The Complaint likewise does not allege that Roland was the source of or sent the alleged phishing emails or any conduct on his part giving rise to those claims occurred in Texas. Rather, BOX alleges Konect and Rizk "appear" to be the source of the phishing emails and that it is "highly likely" Konect is behind the phishing emails. (Doc. No. 34 at 7). Thus, Roland contends that BOX failed to establish that he has the requisite minimum contacts with Texas that would bring him within reach of the state's long-arm statute. Given that it is undisputed that Roland does not live in Texas, he contends that this Court cannot exercise personal jurisdiction over him.

8

In response, BOX contends that the theory of "piercing the corporate veil" can be applied to confer personal jurisdiction over non-resident corporate subsidiaries, affiliates, officers, or shareholders. See *In re Chinese-Manufactured Drywall Products Liability Litigation*, 753 F.3d 521, 546 (5th Cir. 2014) (noting that the court may impute one entity's contacts to another entity for purposes of personal jurisdiction under an alter-ego theory); *Grand Aerie Fraternal Order of Eagles v. Haygood*, 402 S.W.3d 766, 778 (Tex. App. Eastland 2013), *rule 53.7(f) motion granted*, (Apr. 9, 2013) (acknowledging that a trial court can have personal jurisdiction over a nonresident defendant through jurisdictional veil-piercing); *Cappuccitti v. Gulf Indus. Products, Inc.*, 222 S.W.3d 468 (Tex. App. Houston [1st Dist.] 2007) (affirming the trial court's exercise of personal jurisdiction over the non-resident president of the company defendant through application of the alter ego theory); *I & JC Corp. v. Helen of Troy L.P.*, 164 S.W.3d 877 (Tex. App. El Paso 2005) (affirming personal jurisdiction through imputing one company's tortious conduct to the other company pursuant to the alter ego theory).

Box further argues that for the purposes of establishing personal jurisdiction, the veil piercing doctrine is relaxed, a plaintiff need only show that the corporation was a "shell," and there is no need for a finding of unfairness or wrongful conduct. *Enotingto De Liverpool, S.A. De C.V. v. Servi Mundo Llantero S.A. De C.V.*, 82 S.W.3d 622 (Tex. App. Corpus Christi 2002), as supplemented on denial of reh'g en banc, (Aug. 1, 2002); *Graduate Med. Educ. Dev., LLC v. St. George's Univ., Ltd.*, No. H-15-2641, 2016 WL 5844707, *6 (S.D. Tex. Oct. 6, 2016) (noting that alter ego test for purposes of attribution of minimum contact is less strict than that for liability). Thus, BOX argues that here, since the Court has personal jurisdiction over Defendant Konect, it has pled sufficient facts and evidence to establish personal jurisdiction over Roland as well.

BOX points to the following facts to support its alter-ego theory of personal jurisdiction: Roland represented himself as the managing member of Konect to the Texas Secretary of State, Roland represented himself as the president of Konect to the Public Utility Commission of Texas, and that on the Secretary of State's website, Konect is listed as a "fictitious" name.

These facts, however, do not appear to have been pled in in the Complaint. Likewise, the Complaint contains no allegations of "alter ego" *as the basis for personal jurisdiction* over Roland. Instead, the Complaint only alleges that Roland conducts business in Texas and that the torts alleged took place in Texas. (Doc. No. 34 at 9).

Plaintiff failed to establish that this Court has personal jurisdiction over Defendant Roland, and, as such, Roland's 12(b)(2) motion to dismiss is hereby granted. Under Fifth Circuit law, a "corporate veil may be pierced to hold an alter ego *liable* for the commitments of its instrumentality only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the part seeking to pierce the corporate veil." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003) (emphasis added). However, "the alter ego test for attribution of contact, i.e., personal jurisdiction, is less stringent than that for liability." *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985). "'[O]nly a prima facie showing is required on a jurisdiction motion.'" *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1161 (5th Cir. 1983) (quoting 4 C. Wright & A. Miller, Federal Practice and Procedure § 1068, at 250 (1969)). Thus, the Fifth Circuit finds it "appropriate[ ]" to "apply[ ] a less stringent standard for alter ego jurisdiction than alter ego liability." *Id.* Under *Hargrave,* a court should consider whether:

> (1) distinct and adequately capitalized financial units are incorporated and maintained; (2) daily operations of the two corporations are separate; (3) formal barriers between management of the two entities are erected, with each functioning in its own best interests; and (4) those with whom the corporations come in contact

10

>are apprised of their separate identity. Other factors deemed important by the commentators and Texas courts are: (1) common stock ownership; (2) the method and degree of financing of the subsidiary by the parent; (3) common directors or officers; (4) separate books and accounts; (5) common business departments; (6) extent to which contracts between parent and subsidiary favor one over the other; and (7) connection of parent's employee, officer or director to subsidiary's tort or contract giving rise to suit.

*Hargrave*, 710 F.2d at 1162–63 (quoting *Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193 (5th Cir. 1983)).

Here, there are no allegations that Roland is owner of Konect or that he owns any stock in the company. The mere fact that he is an officer is insufficient to show that Roland exercised complete control over Konect such that this Court could exercise personal jurisdiction where it otherwise could not. The Complaint does not allege that the phishing emails were sent by Roland from Texas or that any of Roland's conduct related to the sending of those emails occurred in Texas. It does not allege that Roland commingled funds or disregarded the corporate form in a way typically associated with alter ego liability.

In short, the allegations concerning the factors set out above do not weigh in favor of fusing Roland with the corporate form of Konect. There are no facts alleged demonstrating that Roland "exercised the nature and degree of control" over Konect "necessary to fuse… [them] for the purposes of the Texas long-arm statute." *Graduate Med. Educ. Dev., LLC v. St. George's Univ., Ltd.*, No. CV H-15-2641, 2016 WL 5844707 at *7 (S.D. Tex. Oct. 6, 2016). As such, the Court cannot exercise personal jurisdiction over Roland. Roland's motion to dismiss (Doc. No. 38) is therefore granted.

## IV.    Analysis on remaining 12(b)(6) Motion to Dismiss

Having granted Roland's Rule 12(b)(2) motion to dismiss, the Court now turns to Konect and Rizk's joint Rule 12(b)(6) motion to dismiss. (Doc. No. 37). Konect and Rizk first argue that the Complaint should be dismissed in its entirety because it is a "shotgun" pleading. The

11

Defendants then argue that each of Plaintiff's causes of action—misappropriation of trade secrets under the DTSA, violations of TAPA, tortious interference, and conspiracy—fail to allege a plausible claim for relief.

### a. Shotgun Pleadings

Konect and Rizk first contend that BOX's Complaint should be dismissed in its entirety because it is a "shotgun" pleading. The thrust of this argument is that the Complaint (1) uses the term "Defendants" without reference to *which* defendant specifically is alleged to be responsible, (2) begins each cause of action with an incorporation by reference to the antecedent allegations, and (3) is full of conclusory, vague, and immaterial facts not connected to any particular cause of action. (Doc. No. 37 at 15). Box disagrees.

While the Defendants cite some authority for their contentions, most of these cases are from outside of this Circuit. There appears to be little guidance from the Fifth Circuit supporting their argument. The Fifth Circuit, quoting the Seventh Circuit, has commented that "[t]his 'shotgun approach' to pleadings, . . . where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick, is to be discouraged." *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) (quoting *Rodgers v. Lincoln Towing Serv., Inc.*, 596 F.Supp. 13, 27 (N.D.Ill. 1984), *aff'd*, 771 F.2d 194 (7th Cir.1985)). Moreover, as a court in the Southern District of Texas more recently summarized: "what makes a pleading a 'shotgun' pleading is the inclusion **of irrelevant and unrelated facts not tied to specific causes of action** such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." *Bates v. Laminack*, 938 F. Supp. 2d 649, 667 (S.D. Tex. 2013) (emphasis added).

This is not the case here. Defendants do not point to any specific irrelevant or unrelated facts in the Complaint. Upon evaluating the Complaint, the Court finds that it provides 20 pages

of detailed alleged facts about Konect's business scheme and its relationship with the other Defendant. After pleading these facts, the Complaint clearly sets out each different cause of action against all Defendants (with the exception of assisting and participating, which was alleged against only EBO and Niklaus Schwenker). Finding the Complaint not to be an instance of impermissible shotgun pleading, the Court hereby denies Defendant's motion to dismiss on this issue. (Doc. No. 37).

### b. *Plausible Claims for Relief*

The Defendants' second argument for dismissal is that each of BOX's causes of action—misappropriation of trade secrets under the DTSA, violations of TAPA, tortious interference, and conspiracy—fail to allege a plausible claim for relief. The Court disagrees. Accepting all well-pleaded facts in the Complaint as true and viewing them in the light most favorable to BOX, the Court finds that BOX has plead a plausible claim for relief under the DTSA, under TAPA, and for tortious interference and conspiracy.

Defendants' arguments regarding the facial deficiencies of BOX's DTSA claims (for example, that the customer information stored on the MSC is not a "trade secret" and is not *owned by* BOX) are better fit for a Rule 56 summary judgment motion where the Court may review the evidence. At this stage, they are premature. Defendants' arguments regarding BOX's other claims appear similarly premature. For example, that "BOX fails to plead any facts showing that any of the allegedly fake individuals or businesses are *not* real third-parties" appears to be an argument requiring the presentation of evidence, or lackthereof. As the Complaint stands, BOX has alleged that the entities are not legitimate and has pled facts supporting this conclusion, such as the evidently plagiarized webpages. Therefore, finding that the Complaint sufficiently states a

plausible claim for relief under the standards set by *Twombly* and *Iqbal*, the Court hereby denies Konect and Rizk's motion to dismiss for failure to state a claim (Doc. No. 37).

## V.  Conclusion

Having considered the pleadings, motions, and applicable law, the Court hereby GRANTS Roland's motion to dismiss for lack of personal jurisdiction (Doc. No. 38) and DENIES Konect and Rizk's motion to dismiss for failure to state a claim. (Doc. No. 37). Defendant Rene Roland is therefore dismissed from this matter. Plaintiff's First Amended Complaint (Doc. No. 34) remains the operative complaint in this matter.

Signed at Houston, Texas, this 5th day of March, 2024.

Andrew S. Hanen
United States District Judge